## Hanover Water Co. *versus* Ashland Iron Co.

1. The measure of damages for the diversion of a stream whereby a farm with an ore-bank thereon is injured, is the difference in the market value of the property as a farm and ore-bank immediately before the diversion of the stream and immediately afterwards as affected thereby, without reference to the fact that the water of the stream was formerly used or might hereafter be required for use in washing the ore obtained from the ore-bank.

2. Witness stated generally that he owned land in the neighborhood and was acquainted with its market value; that he knew the general value of ore land in the neighborhood; knew the tract in question, and it had on it an ore-bank, but his knowledge of sales was derived from hearsay, and he had no practical knowledge of ore land never mined. *Held,* that his opinion was competent evidence to aid in determining the value of the land from which the water had been diverted.

3. Assessments for taxes are not competent evidence to aid a jury in assessing the value of land.

4. S. was acting for an iron company in carrying on their work at their ore-bank, and an offer was made to prove a statement he had made to ore miners in reference to the cost of mining the ore per ton. *Held,* that this declaration was not within the scope of his authority as superintendent, and was incompetent.

May 11th 1877. Before Agnew, C. J., Sharswood, Mercur, Paxson, Woodward and Sterrett, JJ. Gordon, J., absent.

Error to the Court of Common Pleas of *York county :* Of May Term 1877, No. 95.

The parties to this action as they stood on the record of the court below, were The Ashland Iron Company, plaintiff, and The Hanover Water Company, defendant. The action was instituted by the presentation to the Court of Common Pleas of York county, on the 7th of September 1874, of a petition for the appointment of viewers to assess damages alleged to have been sustained by the plaintiff on account of the construction of the works of the defendant. Both parties appealed from the report of the viewers, and on the 30th day of August 1875, the court directed an issue to be framed in the case by treating the petition for the appointment of viewers to assess damages presented by the plaintiff as a declaration, the defendant to plead "Not guilty," and the cause to be tried on the issue formed on such pleadings, without regard to the form of action.

[Hanover Water Co. *v.* Ashland Iron Co.]

The petition of the plaintiff set forth that the Ashland Iron Company was a corporation duly incorporated under the laws of Maryland, and authorized by Acts of Assembly of the state of Pennsylvania to take and hold land in Pennsylvania in fee simple or otherwise; that it was and had been for six years the owner of a tract of land in Heidelberg township, York county, containing about twenty-four acres, more or less, further described by named adjoiners; that there was in and upon said tract of land a large and valuable bank of iron ore; that a considerable stream of water had always flowed by its natural channel in, over, upon and across said tract of land, until diverted as in said petition further set forth; that said stream of water afforded the petitioners a water-power of great value to them; that they were enabled by its use to propel their machinery used in mining and preparing and washing their ore and to wash and prepare said ore for smelting; that the defendant had erected a dam on said stream at a point above where it had always been accustomed to enter the petitioners' land, and had wholly diverted the water from its accustomed flow by the natural channel aforesaid and prevented its flow into and over the petitioners' land, whereby they were entirely deprived of the use of said water for propelling their machinery or washing their ore, or watering the stock on their land, to the great damage of the petitioners; that the said land was chiefly valuable as an ore property for the purpose of mining iron ore, and that the petitioners averred and believed that said iron ore could not be profitably mined without the use of said water in its former accustomed flow; that the defendant by its servants and employees, had entered upon said tract of land and made extensive excavations therein and laid pipes therein, to the great damage of the petitioners. They alleged that they could not agree with the Hanover Water Company upon the amount of compensation to be paid to them for the said damages, or upon three disinterested and competent persons to assess the damages—and prayed the court to appoint three such men, to ascertain and report to the court what damages the petitioners were legally entitled to recover from the said Hanover Water Company, by reason of the acts and matters alleged in the petition, and what compensation should be paid to them therefor by the said Water Company.

At the trial before Fisher, P. J., to show that the ore-bank was not abandoned, and the reason why it was not worked all the time, the plaintiffs offered to prove (1) that the bank being owned by them in fee simple it was held in reserve, and that they worked their leased banks first, as the leases thereon would expire; (2) that while there was no formal resolution of the board of managers to that effect, the matter was frequently talked about at their meetings and was assented to by all the managers present; and that this policy was carried out by the company's superintendent; and (3) this bank the company so held in reserve as one of their best banks in York county.

[Hanover Water Co. *v.* Ashland Iron Co.]

The court admitted the evidence under these three offers, which constituted the first, second and third assignments of error.

Becker, a witness for defendant, testified that he owned lands and was acquainted with the general market value of lands in the neighborhood.

The defendant then offered to prove by him " that the land of the plaintiff, on which this ore-bank is located, was worth as much when and immediately after the defendant's dam was built, as it was immediately before, for the purpose of enabling the jury to assess the damages."

The court rejected this evidence, as stated in offer, because the greater portion of plaintiff's claim was for an alleged deprivation of their ore land of the water used for washing, by the erection of the Hanover Water Company's dam, and the witness by whom the facts stated in the offer were to be proved had not shown such acquaintance with the value of ore land as would enable him to give an intelligent answer. The court, however, allowed the defendant to prove the general value of lands of this character in the vicinity for farm land, or both together, or any other value which he was acquainted with.

This was the fourth assignment.

Becker then testified : " I know the general value of ore lands in the neighborhood, know the tract in question, I know it has on it an ore-bank."

Defendant then proposed to prove by witness on stand that the ore-bank property of the plaintiff was worth as much at and immediately after the building of the defendant's dam as it was before, for the purpose of enabling the jury to assess the amount of damages, if any, sustained by the plaintiff.

Upon objection the court asked the witness what was his knowledge or his means of knowing the value of the ore lands in 1872 to 1873.

The witness answered : " I know what they were sold at, but can't tell the date ; I know the price they were sold for when iron was high ; Eichelberger sold his land, ten acres, for $4000, if I am not mistaken ; Kauffman bought from Miller, as Miller said, for $4500, if I am not mistaken ; I can't state ; I suppose about five acres is the quantity ; I was on those tracts ; I know nothing of these sales ; was not along when they were sold ; only know from hearsay ; I have no practical knowledge of ore lands now mined."

The court rejected this evidence because the witness had not sufficient knowledge of the value of ore lands to give an opinion, which was the fifth assignment.

Defendant then offered to prove that the tract of land, owned by plaintiff, through which the stream of water known as " Gitt's run," for the alleged diversion of which by the defendant the plaintiff seeks

[Hanover Water Co. *v.* Ashland Iron Co.]

to recover damages in this suit, flows, was assessed by the assessor for taxes in that township in the fall of 1872, at $1400 for the tract of land and $600 for the ore-bank thereon, and that plaintiff paid taxes on that assessed valuation, for the purpose of enabling the jury to ascertain the value of said tract of land and ore-bank at the time when the alleged damage, if any, was sustained, and to assess the amount of damages, if any, sustained by the alleged diversion of water.

Also, the assessment books of Heidelberg township for the years 1871, 1872 and 1873, in evidence, for the purpose of showing that the property was assessed at a valuation of $1400, and the ore-bank itself at $600; to be followed by proof by witness on the stand and others that plaintiff paid taxes for said property on the amounts of said assessments; this for a like purpose.

The court rejected both these offers, which were the sixth and seventh assignments.

Witness on the stand having testified that Philip A. Small was carrying on the work for the Ashland company, and Samuel Small having testified that his brother Philip A. Small, in attending to the bank, was acting for the Ashland company, the defendant offered to prove by the witness that he had a conversation with P. A. Small, at the Porter ore-bank, when it was in operation in 1863, and P. A. Small was carrying it on for the Ashland company, when he told the witness that every ton of ore they got out there cost a little over five dollars a ton to mine it, for the purpose of enabling the jury to assess the damages.

The court rejected this evidence, on the ground that it did not appear that the alleged declaration of P. A. Small was in the line of his duty as superintendent or agent of the company, if he was superintendent or agent.

This was the eighth assignment.

The plaintiff's first point was :—

That the supply pipe leading from the reservoir to the borough of Hanover is an appropriation of all the water that can be conveyed through said pipe and used, and amounts to an appropriation of such an amount of water, and the defendant must respond in damages to the plaintiff for the value of all the water that will pass through said pipe, even to the extent of the whole stream, if the pipe will convey it; and particularly is this the case, as the defendant has refused to designate the quantity of water appropriated by it, in answer to rules on it to do so, on file in this case.

Answer. " This point is correct."

The defendant's third point was :—

That the fact, if found by the jury, that the plaintiff has not operated its ore-bank, nor used the water of the stream flowing through its property for the purpose of driving a washer or washing ore during the last eleven years, of which a number preceded the

[Hanover Water Co. v. Ashland Iron Co.]

building of its dam by the defendant, should be taken into consideration by the jury in mitigation of damages, if they should find that the plaintiff has sustained any perceptible, actual, direct and immediate damages, which can only be allowed in this case.

Answer: "We cannot answer this proposition in the affirmative, but we instruct the jury that the measure of damages is the difference in the market value of the property of the plaintiff as a farm and ore-bank immediately before the diversion of the water by the defendant and immediately after, as affected thereby; and that if the plaintiff reserved the Porter ore-bank for future use, because they held it in fee, and worked others, which they had leased and were to pay rent for, whether they mined them or not, the fact that they did not work the Porter mine for some years is explained and ought not to prejudice the plaintiffs."

The answers to these points were the ninth and tenth assignments.

The verdict was for the plaintiff for $3200, and defendant took this writ, the assignments of error being those heretofore noted.

*Cochran & Hay* and *W. C. Chapman*, for plaintiff in error.— There could be no damage done to an unused ore-bank by the diversion of the water. It will not suffice to say that at some indefinite time in the future, when its leased mines were worked out, it was the intention of the company to resume the working of the mine held in fee, and it, therefore, demanded as a right that the water shall continue to flow and run to waste until it was to the advantage of the company to apply it to the washing of ore.

The right which an owner of land has to the water, which flows through his land, is not an absolute, unqualified right: 2 Washburn Real Prop. 64, pl. 40; Washburn on Easements 213.

The witness, Becker, had exhibited the qualifications of long residence in the neighborhood, ownership of land, purchase and sale of lands, actual acquaintance with the property alleged to have been damaged, and that it had an ore-bank and some timber upon it, and information respecting sales of ore land in the vicinity, and was qualified to give an opinion: East Penn. Railroad Co. v. Hiester, 4 Wright 53; Searle v. L. & B. Railroad, 9 Casey 57; White Deer Creek Improvement Co. v. Sassaman, 17 P. F. Smith 415; Dorlan v. E. B. & W. Railroad Co., 10 Wright 526; Penna. and N. Y. Canal & Railroad Co. v. Medill, 1 Weekly Notes 287; East Penn. Railroad Co. v. Hottenstein, 11 Wright 38. The assessments should have been admitted to enable the jury to assess the damages: Greenleaf on Evidence, sect. 1493-4; Overseers of Lewisburg v. Overseers of Augusta, 2 W. & S. 65; Vastbinder v. Wager, 6 Barr 339; Sailor v. Hertzogg, 10 Barr 316.

The declarations of Small were admissible as part of the *res*

*gestæ* : 1 Greenleaf's Evidence, sect. 113 ; Jordan *v.* Stewart, 11 Harris 244 ; Grim *v.* Bonnell, 28 P. F. Smith 152.

*J. W. Latimer, David Wills* and *V. K. Keesey,* for defendant in error.—The evidence offered under the first, second and third assignments should have been admitted : Wilson *v.* Jamieson, 7 Barr 126 ; Salmon *v.* Rance, 3 S. & R. 311 ; Garrigues *v.* Harris, 5 Harris 344. The rights of a riparian owner on such a stream of water as this are well defined. He has the right to use it for domestic purposes, for irrigating land and for propelling machinery, and is only bound to return it undeteriorated in quality and not materially diminished in quantity : Howell *v.* McCoy, 3 Rawle 256 ; Wheatley *v.* Chrisman, 12 Harris 298. He has a right to retain it for these purposes as long as is necessary for his purpose : Whaler *v.* Ahl, 5 Casey 98 ; Hetrich *v.* Deachler, 6 Barr 32 ; Hartzall *v.* Sill, 2 Jones 248.

Becker's evidence did not entitle him to be credited as an expert, and was inadmissible : Carr *v.* The Northern Liberties, 11 Casey 327. The declarations of an agent are only admissible when made in the doing of an act which is within the scope of the agency, and which is itself involved in the issue trying, and only then as forming part of, and explaining, the acts done : Patton *v.* Minesinger, 1 Casey 393 ; Hannay *v.* Stewart, 6 Watts 487 ; Fawcett *v.* Bigley, 9 P. F. Smith 411 ; Dick *v.* Cooper, 12 Harris 217 ; Hanover Railroad Co. *v.* Coyle, 5 P. F. Smith 396.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 21st 1877.

The rule for the measure of damages was correctly stated by the learned judge below, that it was the difference in the market value of the property of the Ashland Iron Company as a farm and ore-bank immediately before the water company appropriated the stream and immediately afterwards as affected thereby. It is true that the first point of the plaintiff below was inaccurately worded, and the unqualified affirmance of it might have misled the jury if it had stood alone to think that the measure of damages was the value of all the water that would pass through the pipe even to the extent of the whole stream. But the meaning evidently was that as the iron company might have the whole stream taken from them at any future period and their damages were now to be ascertained and found once for all, the jury had a right to consider that fact in its legitimate bearing upon the market value of the land and ore-bank. If this stream of water added greatly to the value of the property, as the jury might well find, certainly the fact that it might at any future period be exhausted by means of the pipe laid to convey it to the borough of Hanover, would necessarily operate to depreciate

its market value.　Upon another trial this apparent error can and ought to be avoided.

It appears to have been apprehended that the water company would insist that the ore-bank had been abandoned and the stream therefore of no use for the purpose of washing the ore, and such ground they did in point of fact take.　Now it was entirely competent for the iron company to prove that though it 'had not been worked for a number of years it was not exhausted, and the working of it might be resumed with profit whenever they determined to do so.　But why they had abandoned it, if it was still unexhausted and workable, was entirely irrelevant ; not calculated to enlighten the jury upon the only true issue, but on the contrary to turn aside their attention to side issues.　What the intention of the owners in the future might be could have no legitimate bearing upon the question of the value of the land and ore-bank in the market immediately before or after the appropriation of Gitt's run by the water company.　We think, therefore, that the first, second and third assignments of error must be sustained.

The rejection of the evidence as complained of in the fourth assignment may be supported.　The witness Becker had stated generally that he owned land in the neighborhood and was acquainted with its market value.　When asked the value of this land it was objected that the greater portion of the claim of the iron company was for an alleged deprivation of their ore land of the water for washing, and the witness therefore could not speak of the value of this land from the bare knowledge of the value of farm land in the vicinity.　But the witness then testified that he knew the general value of ore lands in the neighborhood ; that he knew this tract and that it had on it an ore-bank.　Why then should he not have been allowed to give his opinion ?　It is true he said in answer to questions by the court that his knowledge of sales of ore land was derived only from hearsay, and that he had no practical knowledge of ore lands never mined.　The knowledge that the best experts possess upon this subject is derived from hearsay.　It is not necessary that they should be actually present and personally know the sale.　Indeed it was held by this court in East Pennsylvania Railroad Co. v. Hiester, 4 Wright 53, that after a witness has given his opinion of the value of land, it was improper for him to give particular instances, because there might thereby be introduced into the cause as many issues as there were instances.　We think, therefore, the fifth assignment of error must be sustained.

We find no error in the rejection of the assessments.　It is true the assessors and public officers are sworn to do their duty.　But the assessment is nothing but their ex parte statement, and their opinion was not subjected to the test of a cross-examination.　The sixth and seventh assignments, therefore, are not sustained.

Nor do we think that the declaration of Philip A. Small was admis-

[Hanover Water Co. *v.* Ashland Iron Co.]

sible. It was testified, indeed, that he was acting for the iron company in carrying on the work at the bank, and the offer was to prove a statement by him to one of the miners, "that every ton of ore they got out there cost a little over five dollars a ton to mine it." This was certainly not within the scope of his authority as superintendent, and it would be very unjust to allow such loose declarations of a mere agent to affect his principal. It was no part of the *res gestæ* upon the broadest construction of the rule which admits the acts and declarations of an agent. Such acts and declarations must be in the course of his duty.

The ninth assignment has been already adverted to and needs no further examination. As to the tenth, the answer to the third point of the defendant below was in part erroneous in introducing the element of the intention of the iron company to remove the ore-bank, the evidence as to which was, as we have seen, irrelevant and ought not to have been admitted; but it would have been correct to say that the fact that the mine was not worked ought not of itself to prejudice the iron company if it was still an unexhausted mine and added to the market value of the property.

Judgment reversed and a *venire facias de novo* awarded.