## Williams et al., Receivers, *v.* Southern Mutual Insurance Co., Appellant.

Argued April 25, 1933.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Robert T. McCracken,* with him *Horace Michener Schell,* for appellant.—There was gross fraud on part of the plaintiffs in the presentation of its claim: Public Nat. Bank v. Ins. Co., 105 N. J. L. 477; Claflin v. Ins. Co., 110 U. S. 81.

The practice of the trial court directing the jury to find particular facts, as well as a general verdict, has been approved by this court: Patterson v. Kountz, 63 Pa. 246; Abraham Fur Co. v. Cameron, 295 Pa. 408; McHale v. McDonnell, 175 Pa. 632.

The special findings of the jury was inconsistent with its general verdict: Goldman v. Mitchell-Fletcher Co., 285 Pa. 116; Zimmerman v. R. R., 297 Pa. 390; Wilson v. Dressed Beef Co., 295 Pa. 168.

*Thomas Raeburn White,* with him *A. J. Creskoff, J. I. Weinstein* and *James R. Wilson,* for appellee.—There was no abuse of discretion in the refusal of a new trial in this case: First Nat. Bank v. Cattie Bros., 285 Pa. 202; Pfeffer v. Johnstown, 287 Pa. 370; Bailey v. Lavine, 302 Pa. 273; Kelly v. R. R., 236 Pa. 110.

There was no error in ascertaining the amount of loss: Wells Whip Co. v. Ins. Co., 209 Pa. 488; Di Foggi v. Commercial U. A. Co., 83 Pa. Superior Ct. 518, 521; Girard Fire Ins. Co. v. Braden, 96 Pa. 81; West Branch Lumberman's Exchange v. Ins. Co., 183 Pa. 366; Allegro v. Ins. Co., 268 Pa. 333; Nusbaum v. Ins. Co., 285 Pa. 332; Specktor v. Ins. Co., 282 Pa. 429.

OPINION BY MR. JUSTICE MAXEY, May 22, 1933:

The Perkiomen Trunk and Bag Company sued the Southern Mutual Insurance Company on a policy of fire insurance dated May 2,. 1930, insuring the plaintiff against loss by fire for a term of one year beginning April 29, 1930. On December 17, 1930, a fire occurred at plaintiff's plant and a large quantity of property was destroyed or damaged by fire. The total sum of insurance carried on the property was $403,000, divided

among twenty-seven companies. The sound valuation of the building was estimated at $133,835.37, and the loss or damage was estimated to be $90,129.09. The parties could not agree as to the sum of loss or damage to the machinery, equipment, stock and material. When the case was tried the company presented two defenses: one was incendiarism on the part of the insured; the other was fraud in the presentation of the claim by the insured. The court below in its charge ruled out the former defense and submitted to the jury the defense of fraud. This defense rested upon a provision of the policy which reads: "This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The court below charged the jury, inter alia, that "The mistake, or the inaccuracy which voids a policy and prevents the plaintiff from recovering anything, is a wilful, deliberate, intentional mistake." Defendant claims that there was such a "wilful, deliberate mistake," or fraud in this case. A large part of plaintiff's claim consisted of a calculation based upon books and records. Defendant showed that the income tax return and capital stock tax report for the appropriate periods filed by the plaintiff company contained figures conflicting with the figures on which plaintiff's claim was based. According to plaintiff's claim there was on the first of January, 1930, $304,000 worth of merchandise in the plant, whereas, an income tax report filed by the company and duly attested by its officers, and offered in evidence by defendant, certified that only $235,000 worth of merchandise was in the plant on the above date. Defendant contended that this discrepancy proved that plaintiff's claim was fraudulent.

Defendant contended that there were two sets of books kept by the Perkiomen Company, one for income tax purposes, and the other as "window dressing" to be exhibited to creditors, especially creditor banks, and that this other or fictitious set of books was later used to support the Perkiomen Company's fraudulent claim for insurance on goods that never existed and were therefore never destroyed. The Federal Income Tax examiner testified that he went to the plant of plaintiff company and was shown books containing figures corresponding with those contained in the income tax report. On this phase of the case the trial judge charged the jury: "If you believe there were two sets of books, one kept for the inside information of the plaintiff to know really what was what, and incidentally used to file a correct Income Tax Report with the Government, and another set of books showing mythical and exaggerated figures and giving a much better state of affairs than the other one, which latter set of books was used originally to deceive other people, but is now handed over by the plaintiff to deceive the Insurance Company and to get an improper verdict in this case, then that would be so clearly fraud and so obviously must involve a knowledge of misrepresentation that there ought to be a verdict for the defendant." Plaintiff denied that there were two sets of books and contended that the evidence of the two sets of books rested largely on the testimony of one Fegandus, who voluntarily retired from plaintiff's service in anticipation of being retired involuntarily. As to this witness's testimony the court charged in effect that if this witness helped keep a false set of books "to gain credit from anybody," and "if he did what he says, and acquiesced in what would have been a wrong act—in what would have been a criminal act—if the books were falsely kept to gain credit from anybody, in that sense he would be an accomplice, and the rule of law is that an accomplice's testimony must be carefully scanned; that it is not as good testimony,

or may not appear to be as good testimony as that of a man who claims to be honest. But the law says you may believe it, especially if you find it corroborated by other people or by other circumstances in the case. That is for you to say." Plaintiff contended further that the income tax reports were not made from a distinct set of books, but were taken from figures furnished by Sedour, the company's accountant, and by Cramer, the company's president, that the income tax reports were based on spurious figures while the claim for insurance was based on genuine ones. In other words, the plea was that while fraud had been committed by the officers of the Perkiomen Company, its victim was the Government and not the insurer. The trial judge correctly charged the jury that they could not find a verdict for defendant merely because they believed plaintiff company had falsified its income tax returns, that for defrauding the government the penalty would have to be imposed in another forum; he carefully submitted to the jury the question whether or not there was false swearing deliberately and intentionally done to cheat the insurance company, saying that if this was a fact, the jury's verdict should be for defendant, but if not, the verdict should be for plaintiffs. (Ira Jewell Williams and J. Thurston Manning, Receivers for the Perkiomen Trunk and Bag Company, Inc., had been joined as parties plaintiff on the day of the trial, thirteen months after the fire.)

The jury returned a verdict that they found the actual cash value of the property was $409,733.31, itemized as follows: Real estate, $133,835.37; machinery, $34,065.15; machines, $5,845; stock, $235,987.79. The jury fixed the loss at $352,980.83. As the insurance was for 90% of the loss, the actual verdict was $317,682.75. The amount which the defendant is called upon to pay as one of the twenty-seven companies insuring the property in question is $1,901.46. On February 1, 1932, stipulation of counsel was filed, with the approval of the court, that the verdict should be for the amount just stated, with

interest from January 8, 1932. Defendant thereafter filed its motion and reasons for a new trial, which motion was discharged by the court in banc. Judgment was thereafter entered upon the verdict and appeal was taken to the Superior Court. The Superior Court sustained the opinion of the court of common pleas. An appeal was then allowed to this court.

In this case there were issues of fact which manifestly had to be submitted to the jury for determination. There was only one set of the Perkiomen Company's books actually introduced in evidence. There was testimony as to the existence of another set of books but this testimony was oral and its credibility was for the jury. The fact that the income tax return of the Perkiomen Company contained figures at variance with the figures offered by the company in support of its claim against the insurer proved that the company sired at least one illegitimate certification, but the jury and not the court had to identify the illegitimate. Appellant stresses the fact that in the income tax return for the year 1929 the stock of merchandise of the Perkiomen Company was set forth as being $235,987.79, and the value of the machinery and equipment as $34,065.15, and that these were the precise amounts declared by the jury both as the sound value and the losses alleged to be sustained on these respective items. Appellant argues that the conclusion from these facts is legally irresistible that the jury must have found that there *were* two sets of company books and that the set produced in court was a fraud and the jury having so found, the only consistent verdict was one for the defendant. As to this Judge KELLER of the Superior Court in his able opinion aptly says: "But it does not follow. While a verdict for unliquidated damages must be based on evidence it does not have to agree exactly with the evidence or any part of it. It may be for the highest amount testified or for the lowest, or for any sum in between that the jury may consider fair and reasonable. Having determined that

the insured did not keep two sets of books, in order that no injustice might be done the defendant company, they [i. e., the jury] may have concluded that the plaintiff certainly had on December 31, 1929, the stock and machinery which it had returned to the Collector of Internal Revenue that it possessed on that date, and that the subsequent operations had not materially increased or decreased its value. The jury may have concluded that there were errors in the valuations submitted by the plaintiff, but that they were not made wilfully and knowingly and with intent to cheat and defraud the insurance company, and therefore, did not cause a forfeiture of its right to recover on the policy," citing Allegro v. Rural Valley Mutual Fire Ins. Co., 268 Pa. 333, 337, 112 A. 140.

In an opinion filed by this court on April 10, 1933, in the case of Trainer v. Fort, we said: "The rule is well settled in Pennsylvania that if a case is supported by competent oral testimony, no matter how strong may be the countervailing testimony, it is for the jury. In Lindemann v. Pitts. Rys. Co., 251 Pa. 489, 493, 96 A. 1085, this court in a Per Curiam opinion affirmed the judgment of the court below and cited approvingly this from the opinion of the lower court: 'Credibility is the touchstone of testimony in the measure of its weight. The weight of testimony is that which the jury determines after considering the various elements necessarily entering into its make-up; . . . . . . Some testimony may be as good as gold, as genuine as a standard coin, and some as worthless as a counterfeit. Testimony may bear the stamp of truth or the badge of fraud and perjury. Who is to pass upon its value? The jury alone. The court cannot invade the province of the jury. The court's supervisory control rests in the discretion to grant new trials.' "

This court has repeatedly held that it will not disturb an order of the trial court either refusing or granting a new trial unless it is based on error of law or where

the record shows an unmistakable abuse of discretion. Where the question raised in the case "must be determined upon a consideration of oral evidence, we necessarily largely rely upon the judgment of the court below, which best knows what are the requirements of justice in such cases": Cleveland Worsted Mills Co. v. Myers-Jolesch Co., Inc., 266 Pa. 309, 109 A. 662. See also Lombardo v. Barilla, 302 Pa. 460, 153 A. 725; Reist v. Wogan, 281 Pa. 107, 126 A. 249, and Loftus, Admr., v. Miners Nat. Bank of Pottsville, 308 Pa. 362, 162 A. 227.

In 2 R. C. L., page 194, section 167, appears the following: "Where the evidence is conflicting, the reviewing court will only examine it to see if there was any creditable evidence to support the verdict, and having ascertained that fact it will not as a general rule disturb it. ...... One ground on which it [i. e., this rule] might be rested is that the jury has had the advantage ...... of seeing the witnesses and observing the manner in which the testimony was given. ...... This salutary rule is also especially applicable where the trial court has refused to set the verdict aside, for in such a case not only does the verdict carry with it the indorsement of the jury who have seen the witnesses, but also that of the trial judge who has had the same advantage. ...... Moreover, it must be remembered that the fact that the reviewing court would have reached a different conclusion does not of itself require a reversal."

There were many suspicious circumstances attendant upon this fire, but they do not possess sufficient probative value to sustain the charge of incendiarism. Therefore, the trial judge properly withdrew this charge from the jury's consideration.

Appellant also complains that much of the evidence admitted to sustain the proof of the loss was based on mere assumptions. As to this Judge KELLER in his opinion said: "To arrive at the value of the personal property on the day of the fire, plaintiff's accountant started

with the inventory as a base, added to it the cost of all material purchased during the period and the cost of productive labor and overhead expenses, and deducted from the sum so obtained the total sales during the period as diminished by returns, allowances and discounts and an estimated *gross* profit. Where the subject of insurance is a manufactory whose raw material is being made into finished product and sold, and the new raw material in turn is purchased, no better method of arriving at the value of the stock and material on hand at any given time has been suggested, provided the percentage of gross profit which is deducted from the total sales, etc., is reasonably accurate. It is well nigh impossible to arrive at an absolutely correct figure and the law does not require it. It is satisfied with the best proof available in such circumstances: Allegro v. Rural Valley Mutual Fire Ins. Co., 268 Pa. 333 [112 A. 140] Di Foggi v. Commercial Union Assurance Co., 83 Pa. Superior Ct. 518."

The trial judge discharging the rule for a new trial said as to this: "A case of this kind, because of the complexity of the figures and the intricacy of the necessary calculations, does not satisfactorily lend itself to trial by a jury. Whether the jury in this case entirely understood the import of all the figures which were submitted to them, and whether they arrived at their verdict by intelligent mental processes, are questions which cannot be answered with assurance. It does appear, however, that the verdict at which they arrived, however they may have reached it, is one that may properly be regarded as doing substantial justice between the parties. It represents probably the lowest amount which, under the evidence, could have been awarded to the plaintiffs if they were to receive a verdict at all. The defendant, therefore, can scarcely complain as to the amount of the verdict, but only that it should have been outright for the defendant. Such a verdict would have necessitated a finding of fraud, and the jury was not

compelled to come to the conclusion that there was fraud in the presentation of the claim to the insurance companies. Even if a new trial were granted, the same issue would again have to be passed upon by the jury."

The pleadings in this case squarely raised issues of fact. At the trial the evidence was so conflicting as to require its submission to the jury. The submission was made by the learned trial judge in a charge so fair and comprehensive as to invite no exception.

The judgment is affirmed.

Mr. Justice SCHAFFER dissented; Mr. Justice KEP-HART concurred in the result.