Bellettiere, Appellant, *v.* Philadelphia.

Argued April 16, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*I. R. Kremer,* with him *Max E. Cohen,* for appellant in No. 97.

*Joseph G. Feldman,* with him *Edward M. Goldsborough,* for appellants in Nos. 99, 100 and 101.

*Harry Lapensohn,* with him *James Francis Ryan,* Assistant City Solicitors and *Frank F. Truscott,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 27, 1951:

This is another in the ever lengthening line of cases in which we are asked to overrule the granting of a new trial.

In the evening of March 19, 1949 plaintiff Felix Bellettiere was operating his automobile northward on Fifth Street in Philadelphia; in the car with him were his wife, her father and mother, her sister, her brother, and two children. He testified that when he came to the house line of Morris Street he looked to the left for a distance of 250 feet and saw no vehicle coming toward him; when he reached the center of the intersection he noticed for the first time a fire truck of the City of Philadelphia approaching about 100 feet away and traveling at a speed which he estimated at

55 to 65 miles an hour. He thereupon attempted to increase his own speed but when his automobile reached the north curb line of Morris Street the front of the truck hit the left center of his car. He said that the truck had not blown a siren nor given any other warning of its approach and he did not see any blinker lights on it until it was "coming into" him. The other occupants of the car testified, in general, that no siren had been blown and that they did not see the fire truck or its flashing red light until immediately before the collision.

For the defendant, the City of Philadelphia, the driver of the truck testified that he was responding to a fire alarm and was proceeding eastwardly on Morris Street at a speed of 20 miles an hour with "siren blowing, bells ringing, revolving lights in working condition." When he arrived at the intersection of Fifth Street he reduced his speed to 10 miles an hour, and, looking to the right, he saw the Bellettiere car approaching from about 60 to 70 feet below Morris Street; he looked to the left and again to the right and then "he was on top of me and that is when we collided." A lieutenant in the Fire Bureau who was seated on the right-hand side of the driver testified that from the time they left the fire house until the collision occurred he continuously sounded the siren and rang the bell. Four other firemen riding on the back of the truck also testified that as they traveled east on Morris Street the siren was blowing, the bell was ringing, and the rotary red light was flashing. A person asleep in his home a half block from the corner of Fifth and Morris Streets testified that he was awakened by the noise of the siren and the bell. Another person testified that he was in his house a half block from the intersection and he heard the siren and bell of the fire engine coming down the street. Another person testified that he was in his home about 75 feet from the corner and he heard the

siren "clanging . . . very loudly". Still another person, standing on the northeast corner of the intersection, testified that he saw the fire truck approaching at about 20 miles an hour, that it started to slow down and at that time he saw the automobile "shoot out headed towards the north on Fifth Street"; his attention had been originally attracted by the siren and the bell.

The present suit was brought by Felix Bellettiere, his wife Carmella, and their child Marie by her father as guardian, against the City; the latter brought in Felix Bellettiere as additional defendant in the Carmella and Marie actions. The jury found for the plaintiffs against the City, awarding damages to Felix Bellettiere in the sum of $4800, to Carmella in the sum of $25,000, and to the child Marie in the sum of $200. The court refused the City's motions for judgment n.o.v. but granted its motions for a new trial. The plaintiffs, and Felix Bellettiere as additional defendant, appeal.

The court below filed an opinion in which, after summarizing the testimony on both sides, it stated that all the passengers in the car had brought suit against the City of Philadelphia and were therefore not disinterested witnesses, that the testimony given by those riding on the truck as to its speed and the sounding of the siren and bell and flashing of the red light was all positive evidence, that the court did not consider that there was enough evidence to establish recklessness on the part of the crew of the fire truck, that there was a question whether the verdicts were grossly excessive, and that, "Under all the circumstances of the case, the court was of the opinion that there may have been prejudice in rendering the verdicts, and that in the interests of justice a new trial should be granted."

In *Class & Nachod Brewing Co. v. Giacobello*, 277 Pa. 530, 121 A. 333 definite principles were formulated governing the scope of appellate review of an order granting a new trial; one of the rules there laid down

(p. 538, A. p. 336) was that "whenever the reason or reasons assigned involve the exercise of discretion, the order of the trial court will not be interfered with unless a palpable abuse of power appears." This statement, at least in substance, has been reiterated and applied in a great number of subsequent cases in this court.* We have also said that "The presumption is that the trial court was justified in granting a new trial even when the reason given therefor is an insufficient reason unless the court expressly states that it is the only reason": *Bailey v. C. Lewis Lavine, Inc.,* 302 Pa. 273, 277, 153 A. 422, 423; *Cuteri v. West Penn Rwys. Co.,* 305 Pa. 347, 350, 157 A. 686, 687; *Reese v. Pittsburgh Rwys. Co.,* 336 Pa. 299, 301, 9 A. 2d 394, 395; *Samuels v. Johnson,* 355 Pa. 624, 627, 50 A. 2d 670, 672; *Streilein v. Vogel,* 363 Pa. 379, 286, 69 A. 2d 97, 101; *Foster v. Waybright,* 367 Pa. 615, 80 A. 2d 801. Also that "An award of a retrial is an inherent power of the court of common pleas and entirely discretionary":

---

* Examples: *March v. Philadelphia & West Chester Traction Co.,* 285 Pa. 413, 417, 418, 132 A. 355, 357; *Bailey v. C. Lewis Lavine, Inc.,* 302 Pa. 273, 277, 153 A. 422, 423; *Cuteri v. West Penn Rwys. Co.,* 305 Pa. 347, 350, 157 A. 686, 687; *Williams, Receivers, v. Southern Mutual Insurance Co.,* 312 Pa. 114, 121, 122, 166 A. 582, 585; *Marko v. Mendelowski,* 313 Pa. 46, 47, 169 A. 99; *Frank, Admr., v. Bayuk,* 322 Pa. 282, 283, 185 A. 705; *Reese v. Pittsburgh Rwys. Co.,* 336 Pa. 299, 9 A. 2d 394; *Weinfeld v. Funk,* 342 Pa. 160, 20 A. 2d 206; *Hoban v. Conroy,* 347 Pa. 487, 489, 32 A. 2d 769; 770; *Samuels v. Johnson,* 355 Pa. 624, 627, 628, 50 A. 2d 670, 672; *Frank v. W. S. Losier & Co., Inc.,* 361 Pa. 272, 276, 277, 64 A. 2d 829, 831; *Peoples First National Bank & Trust Co., Administrator, v. Christ,* 361 Pa. 423, 428, 429, 65 A. 2d 393, 396; *Streilein v. Vogel,* 363 Pa. 379, 385, 386, 69 A. 2d 97, 101; *Lambert v. Durallium Products Corporation,* 364 Pa. 284, 286, 72 A. 2d 66, 67; *Held, Admrx., v. Van Tiggelen,* 364 Pa. 317, 318, 319, 72 A. 2d 73, 74; *Rosanoff v. Duquesne University,* 365 Pa. 121, 123, 74 A. 2d 172, 173; *Chapple v. Sellers,* 365 Pa. 503, 504, 505, 76 A. 2d 172, 173; *Foster v. Waybright,* 367 Pa. 615, 80 A. 2d 801.

*Frank, Administrator v. Bayuk,* 322 Pa. 282, 283, 185 A. 705; *Frank v. W. S. Losier & Co., Inc.,* 361 Pa. 272, 276, 64 A. 2d 829, 831; *Streilein v. Vogel,* 363 Pa. 379, 385, 69 A. 2d 97, 101. Also that "One of the least assailable grounds for the exercise of such power [to grant a new trial] is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded; especially in such a case is an appellate court reluctant to interfere." *Frank v. W. S. Losier & Co., Inc.,* 361 Pa. 272, 276, 277, 64 A. 2d 829, 831.

It is true that in *Jones v. Williams,* 358 Pa. 559, 58 A. 2d 57, this court reversed an order granting a new trial where the plaintiff recovered a verdict against the original defendant but the jury exonerated the additional defendant and the trial court granted a new trial solely on the ground that the additional defendant should also have been found negligent; it was held that this action of the court constituted an abuse of discretion because the verdict was strictly in accord with the evidence. In *Martin v. Arnold,* 366 Pa. 128, 77 A. 2d 99, an order granting a new trial was reversed where a verdict had been rendered against both the original defendant and the additional defendants, a new trial was granted to the latter, and the original defendant appealed. The evidence so clearly supported the verdict that this action of the court was adjudged a manifest abuse of discretion. In *Stewart v. Ray,* 366 Pa. 134, 76 A. 2d 628, an order for a new trial was reversed because the trial court misconceived the true nature and effect of the testimony of one of the witnesses, and, in weighing that testimony, wholly ignored a settled principle of evidence. In all of those cases, however, the rule was again expressly asserted that an order awarding a new trial will not be reversed on appeal unless a palpable abuse of discretion on the part of the court below is

clearly shown, or unless an erroneous rule of law which in the circumstances necessarily controls the outcome of the case is certified by the court below as the sole reason for its action.

In the present case the learned trial court did not, in so many words, express the opinion that the verdict of the jury was against the weight of the evidence; such a conclusion, however, is clearly inferable from its observations concerning the testimony and its statement that "in the interests of justice a new trial should be granted." The court was justified in the view it thus took of the evidence because the testimony of the firemen riding on the truck was corroborated by four entirely disinterested witnesses, whereas the story told by the plaintiff Felix Bellettiere that he did not see the fire truck until it was within 100 feet (although it had been coming along Morris Street from Eighth Street three blocks away) and that he then estimated its speed at from 55 to 65 miles an hour, can scarcely be regarded as convincing. While we would strongly impress upon trial courts the obvious desirability of stating in detail the exact reasons for which alone a new trial is granted instead of relying upon the mere generality that the "interests of justice" require it, we are, in the present case, of opinion that the court acted well within its discretion in awarding a new trial to the defendant both as against the plaintiffs and the additional defendant (who was himself one of the plaintiffs), in order that the issue involved may be finally determined with greater assurance of a just result.

Order affirmed.

---

CONCURRING OPINION BY MR. JUSTICE BELL:

Mr. Justice STERN has made an important analysis and review of cases pertaining to new trials in a learned opinion in almost all of which I concur. He

has wisely, it seems to me, impressed upon trial courts the desirability of stating in detail the exact reasons for which a new trial is granted. However, in this case a new trial was granted because "the interests of justice require it"; and I would affirm on that ground alone.

A trial court is a court of justice in whose conscience and sense of justice we should repose the utmost confidence and trust. A trial judge sometimes senses from the manner of testifying, or from little incidents that happen in a courtroom during the trial, things which an appellate court reading a cold bare record cannot possibly detect. He may believe or be convinced that (one or more) witnesses are lying, or exaggerate or distort to such an extent as to be unworthy of belief, or for some other reason their testimony is unreliable, or that a party's case is fabricated out of the whole cloth— yet he does not wish to stigmatize the witness (or witnesses) and so he grants a new trial "because the interest of justice requires it." Under such circumstances how is an appellate court in a position or qualified to say that the trial judge abused his discretion?

I would, therefore, hold that where a trial judge who sees and hears the witnesses grants a new trial, not for an error of law or because the verdict was against the weight of the evidence, but solely because of his conscientious conviction that the interest of justice requires it, an appellate court will not, in the absence of fraud or collusion, reverse such action. This view is supported, I believe, by both reason and authority: *Weinfeld v. Funk,* 342 Pa. 160, 20 A. 2d 206; *Kerr v. Hofer,* 341 Pa. 47, 17 A. 2d 886.