## Milan, Appellant, v. Bethlehem.

Argued November 12, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Everett Kent,* with him *Milton J. Goodman,* for appellants.

*Daniel L. McCarthy,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE JONES, February 13, 1953:
The several plaintiffs, as owners and occupiers of four separate properties in Lower Saucon Township, Northampton County, respectively sued the City of Bethlehem in trespass upon similar causes of action to recover damages for injury to their properties through the defendant city's maintenance of a nuisance upon a tract of land which it owns in Lower Saucon Township in proximity to the plaintiffs' properties. The defendant acquired its property, consisting of eighty-eight acres, in 1942, subsequent to the plaintiffs' acquisitions. Thenceforth, and continuously

thereafter until the institution of the instant suit in 1949, the city maintained on its property a dump for the disposal of garbage for its own municipal purposes. The jury returned money verdicts for the respective plaintiffs on the four separate causes of action. The defendant filed motions for judgments n.o.v. and for a new trial. The court below, deeming that the plaintiffs had, beyond question, "produced ample evidence from which the jury could find that defendant was maintaining a nuisance and the plaintiffs were injured thereby", refused the defendant's motion for judgments n.o.v. From that action, the defendant has not appealed. It must, therefore, be taken as established for present purposes that the defendant's use of its land constituted a nuisance to the plaintiffs' pecuniary hurt. The court en banc did, however, grant the defendant's motion for a new trial on the ground that the learned trial judge erred in his charge to the jury with respect to the applicable measures of damages. From that order, the plaintiffs have severally appealed. Ordinarily, such a burden is a very heavy one.

In *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857, our present Chief Justice made a thorough and discriminating review of our cases involving appeals from the granting of new trials. After noting that the definite principles governing the scope of appellate review in such circumstances had been formulated in *Class & Nachod Brewing Co. v. Giacobello,* 277 Pa. 530, 121 A. 333, Mr. Justice Stern quoted with approval (p. 642) the following rule laid down in the *Giacobello* case,—" 'whenever the reason or reasons assigned [for granting a new trial] involve the exercise of discretion, the order of the trial court will not be interfered with unless a palpable abuse of power appears.' " Continuing, Mr. Justice Stern observed that "This statement, at least in substance, has been reiterated and applied

in a great number of subsequent cases in this court" and cited in marginal footnote eighteen of the more recent of such cases. He further noted that "We have also said that 'The presumption is that the trial court was justified in granting a new trial even when the reason given therefor is an insufficient reason unless the court expressly states that it is the only reason': [citing cases]." The rule was then succinctly restated in the *Bellettiere* case (pp. 643-644) as follows: ". . . an order awarding a new trial will not be reversed on appeal unless a palpable abuse of discretion on the part of the court below is clearly shown, or unless an erroneous rule of law which in the circumstances necessarily controls the outcome of the case is certified by the court below as the sole reason for its action." In the instant case, the court below has certified that the only reason for granting a new trial was the supposed error in the trial judge's instructions to the jury on the relevant measures of damages and that, otherwise, the court would have entered judgments on the verdicts for the plaintiffs. We think these instructions were proper. However, we find other error in the charge which cannot be overlooked as harmless. A new trial is, therefore, indicated. Since the case must go back for retrial, we shall take occasion to point out why the instructions of the learned trial judge on the measures of damages were correct in order that error on that score may be obviated at the new trial.

The trial judge properly left it to the jury to determine, under all of the evidence, whether the nuisance maintained by the city was temporary or permanent in character and then charged that if the jury found the nuisance to be temporary, "the measure of damage would be the diminished enjoyment or use of the properties of the Plaintiffs . . . up to the time of suit", but, if the jury found the injury to be permanent, they

"would be justified in allowing damages for the diminution in the market value of the land, the measure being the difference between what the property would have sold for as affected by the injury and what it would have brought unaffected by such injury." The trial judge further correctly observed that "No land was taken in this case by the City at all, as would be the situation in a condemnation proceeding." The plaintiffs' complaint was that they had been damaged by reason of their loss of use and enjoyment of their properties which had been permanently injured by the nuisance which the city was allegedly maintaining on its adjacent property. The court en banc was of the opinion that "depreciated market value is not allowed as a measure of damage where there is no physical injury to the land itself or to improvements, or the natural resources or benefits annexed or incident to the land" and accordingly held the instruction of the trial judge in such connection to be error.

It is true that the rule at common law in England was that successive actions lay for invasions of the use and enjoyment of real property by a continuing nuisance, where no land was taken, and that damages could be awarded only for such causes up to the time of the commencement of the action and within the period of the statute of limitations. In *Battishill v. Reed,* 18 C. B. 696, 714, 139 English Reports 1544, 1551 (decided in 1856), which was concerned with a continuing nuisance, consisting of the overhanging eaves of the defendant's house, it was held that evidence as to the diminished saleable value of the plaintiff's adjacent property due to prospective subsequent invasions from the continuing nuisance was inadmissible on the question of the measure of damages but that the defendant was liable to successive actions for such future invasions. As Chief Justice JERVIS expressed it,—

"Every day that the defendant continues the nuisance, he renders himself liable to another action. . . . [The jury] may give such damages as may compel [the defendant] to abate it, but not . . . the difference between the original value of the premises and their present diminished value." Such appears to be still the law in several of our sister States. The rationale of the rule is that it would be unfair to compel a defendant to pay, once for all, where there has not been a physical taking, for invasions of the use and enjoyment of property by way of a nearby nuisance that may not continue in the future. The rule was also thought to have a beneficial effect in that the threat of successive actions for damages might cause the perpetrator to abate the nuisance.

But, the rule was also inefficacious. Where abatement of the nuisance was not within the power of the defendant, he continued subject to the harrassment of repeated actions for the same cause. And, where it was to the greater public interest that the nuisance be permitted to continue, the maintainor was likewise subject to the continued harrassment of successive actions. These obvious disadvantages together with the law's desire to discourage or restrict litigation long ago gave rise in this Country to the doctrine of "permanent nuisance" for which prospective damages based on the depreciation in the value of the affected property due to the invasion are recoverable once for all: see *The Town of Troy v. The Cheshire Rail Road Company*, 23 N.H. 83, 102 (1851). In that case the nuisance consisted of an embankment built by the defendant railroad to the detriment of a highway and bridge of the town. It was there said (p. 102),—"Whenever the nuisance is of such a character, that its continuance is necessarily an injury, and where it is of a permanent character, that will continue without change from any

cause but human labor, there, the damage . . . may be at once fully compensated . . . ." The same result is now attained in England under an equity rule which owes its origin to the Chancery Procedure Amendment Act of 1858 (21 & 22 Vict. c. 27), known as Lord Cairn's Act, whereby the Court of Chancery possesses jurisdiction to award damages, both past and prospective, in lieu of an injunction for the redress of a continuing nuisance: see *Leeds Industrial Co-operative Society, Limited v. Slack,* Law Rpts., Appeal Cases, 1924, pp. 851, 857. Impairment of the use and enjoyment of land, and not a taking, was involved in the *Leeds* case.

The redress of a permanent nuisance by an award of complete compensation for the continuing injury is appropriate in a case such as this where the assailed activities, although not carried on in an exercise of eminent domain, are yet of such a character that a court of equity would decline to enjoin their continuance because to do so would be adverse to the public interest involved: *Harrisonville v. W. S. Dickey Clay Manufacturing Co.,* 289 U. S. 334, 339. The Restatement, Torts, §930, well expresses the rule as to the measure of damages applicable where a person causes continuing recurrent tortious invasions of the land of another by the maintenance of a structure on his own land or by acts and operations thereon. *Comment b,* in treating with damage to neighboring landowners incident to the construction and operation of establishments employed in necessary public service, pertinently recognizes that "the public interest, which actuates the courts to deny an injunction calculated to interfere with an essential public service, requires also that such a utility enterprise be permitted, when sued for past invasions, to have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions. This is most obviously true when the

damage is a necessary incident of the lawful operation of the enterprise, in which case the allowance of full damages has the effect of the exercise of the power of eminent domain." Nor can the trespasser's right to have full damages assessed against him, once for all, be any different than the injured landlord's right to an award for the prospective damages. The same measure is equally binding upon both: *Rider v. York Haven Water and Power Company*, 251 Pa. 18, 24, 95 A. 803.

Here, the garbage disposal dump is maintained for the benefit of the inhabitants of the defendant municipality which, although it possessed the power of eminent domain, did not exercise it, the situs of the dump being beyond the limits of the municipality. In such circumstances, the proper measure of damages is the same for the trespass as for a condemnation under the power of eminent domain: see *Rider v. York Haven Water and Power Company*, supra, at pp. 23-24, quoting from *Carpenter v. Lancaster*, 212 Pa. 581, 61 A. 1113, an action in trespass for damages for stream pollution.

The right to prospective damages for a continuing nuisance does not depend upon whether the land of the claimant or a portion of it has been taken but upon the prospect of the permanency of the nuisance. If it is likely to continue into the indefinite future as desirable from the standpoint of public interest or because of its structural character and general utility (and consequently not to be abated), the injury is permanent and, therefore, compensable on the basis of the diminished value of the injured property even though the injury is only to its use and enjoyment. The distinction between injury to land, *qua* land, and injury to the use and enjoyment thereof is not determinative of the right to prospective damages for injury to either. The damage in either instance may be permanent or

temporary depending upon the prospect of the abatement of the cause; and a claim for prospective damages for the continuing invasion of a property by noxious odors, fumes, smoke, vermin or pollution of streams, as in the instant case, would seem to be no less enforceable than is a claim for full damages for injury to land from seepage or the diversion, diminution or pollution of streams as in *Rider v. York Haven Water and Power Company,* supra, *Vanderslice v. The Irondale Electric Light, Heat & Power Company,* 232 Pa. 435, 81 A. 445; *Carpenter v. Lancaster,* supra, and *Hanover Water Co. v. Ashland Iron Co.,* 84 Pa. 279.

In the *Rider* case, supra, the defendant power company by its erection of a dam diverted a stream from the land of the plaintiff, a riparian owner. The plaintiff sued in trespass for damages. Asserting that the cause of the injury was abatable and therefore temporary, the plaintiff limited his claim to compensation for the damage suffered up to the time of the issuance of the writ. The trial judge treated the case as a trespass of transient character and, on that theory, submitted the case to the jury which returned a verdict for the plaintiff for both the specially limited damages and also for punitive damages. Judgment was entered on the verdict and the defendant appealed, contending, inter alia, that the injury was permanent and that the correct measure of damage was the diminished value of the plaintiff's property due to the defendant's obstruction of the stream. The opinion for this court expressly notes that an exercise of eminent domain was not involved so far as the record disclosed. In reversing the judgment and sending the case back for a new trial, Mr. Justice ELKIN, speaking for a unanimous court, said (pp. 21-22),—"In our own State more or less confusion has arisen in determining what rule should be applied as the proper measure of damages in actions

of this kind. This court has taken occasion to review the authorities in several recent cases, and as a result it must be accepted as finally settled in this jurisdiction that where the injury to real estate is **permanent**, the measure of damages is the difference in market value, before and after the injury, or the cost of removing the obstruction, whichever is the lower amount", citing, inter alia, *Rabe v. Schoenberger Coal Company,* 213 Pa. 252, 62 A. 854, which, it is true, was concerned with an injury to the land itself, i.e., a subsidence of surface due to mining.

Use and enjoyment is a possessory right and may belong to a tenant: cf. *Seely v. Alden,* 61 Pa. 302, 305. But, where the claimant to damages for injury to land is both owner and occupier of the affected property, injury to his use and enjoyment is no less permanent where the nuisance is a continuing one. Such occupying owner recovers for the diminished value of his property because of the nuisance regardless of whether the injury is to the land or to his use and enjoyment of it. An award for the loss in property value due to the harmful invasion compensates for either or both, injury to the land or injury to its use and enjoyment: *Seely v. Alden,* supra.

It cannot be said, as a matter of law, that the garbage dump in the instant case is transient and temporary. The prospect is that it will be continued into the indefinite future for the uses of the defendant municipality, and that spells permanency. On the basis of the evidence adduced at trial, the jury was justified in finding that the injury was permanent in relation to ordinary human affairs which is what the law contemplates. "Whether the injuries were permanent . . . raise[d] a disputed question of fact which is ordinarily for the jury under proper instructions of the court. The evidence may be such as to warrant a court in decid-

ing that the injury was permanent, or that it was transient, but when this is done there must be no doubt as to the inference to be drawn from the established facts. When there is a conflict of testimony upon this point, or where different inferences may be drawn from the facts, it is usually a question for the jury. In the case at bar our conclusion is that this question should be submitted to the jury [citing cases]": *Rider v. York Haven Water and Power Company*, supra, at p. 25. It can with equal propriety be said here that the case was properly for the jury.

The court below appears to have attached undue importance to the phrase "physical injury to the land itself" where it appears in some of our cases. Nor do the cases cited by the court en banc support the view that prospective damages will be awarded for continuing nuisances only where there is injury to the land itself as opposed to injury to the use and enjoyment thereof. In *Robb v. Carnegie Bros. & Co.*, 145 Pa. 324, 22 A. 649, the plaintiff alleged that the defendants' manufacture of coke in ovens on their adjoining land damaged his crops, reduced the fertility of his soil and rendered his home less desirable. He offered no evidence, however, as to these items of alleged damage except a general estimate as to the " 'amount of damages done to this property by reason of these ovens being built as they are, and the smoke from them,' between certain dates." The admission of this testimony was held to be error not because of any want of relation to the correct measure of damages but because of its lack of probative value. The reference in *Robb v. Carnegie*, supra, to the absence there of an appropriation of any land was a non-decisional observation. Compare *Carpenter v. Lancaster*, supra, at pp. 585-586. In *Alexander v. Stewart Bread Company*, 21 Pa. Superior Ct. 526, the plaintiffs sued in trespass to recover dam-

ages based on the diminished value of their home as a residence because of the odors and noises arising from the stables of the defendant company. The trial court gave binding instructions for the defendant. The Superior Court reversed and awarded a new trial on the ground that whether the alleged injury was sufficient to support an action of nuisance was a question for the jury, adding that, since there was no evidence that the nuisance could not be abated, the depreciation in the value of the plaintiffs' property was not a proper measure of damages. This case inferentially confirms the view that whether prospective damages are the proper measure depends upon the likelihood of an abatement of the nuisance. In *Farver v. American Car and Foundry Company*, 24 Pa. Superior Ct. 579, the plaintiff claimed damages for the impairment of his use and enjoyment of his property because of smoke, fumes and noises from the defendant company's plant. There was no question in this case as to whether or not the plaintiff was entitled to recover for prospective damages.

While we approve the instructions of the learned trial judge as to the applicable measures of damages according as the nuisance was found to be temporary or permanent, there was harmful error in the charge wherein the court permitted the jury to find verdicts for the plaintiffs embracing both types of damage, viz., for the loss of use and enjoyment and also for the diminished value of their properties due to the nuisance. Thus, the court instructed the jury that any damages "for the diminution in the market value of the land" would be "in addition to . . . damages for diminished enjoyment or use of the property." That was error. The plaintiffs, being both owners and occupiers of their respective properties, could recover for loss of use and enjoyment if the injury was temporary

*or* for the diminished value of their property if the injury was permanent. They were not entitled to recover for both.

In *Seely v. Alden,* supra, Justice AGNEW said (p. 305),—"Of course when an owner claims in both capacities [i.e., as owner and occupier] he cannot be allowed a double compensation for the same loss; so that the damages for use must not represent in any part the damages for the permanent injury. It is the duty of the court to see that one does not overlap the other." In addition to charging the jury in the instant case that "damages for diminished enjoyment or use must not represent in any part the damages for permanent injury", the court further cautioned the jury,— ". . . I don't want you to be confused with respect to these two measures of damages, one claim being for permanent damages to the real property and the other being a claim for loss of use, reasonable use and enjoyment. While they are two separate items of damage for your consideration, your award will cover both, if you award for both. If you award for only one, of course your award will cover only one. You won't find separate verdicts for loss of use and permanent damage. Your verdict in each case will be one amount, in the event that you find in favor of the Plaintiffs." As a consequence, each of the verdicts is for a lump sum for the respective plaintiffs. It is, therefore, impossible to determine whether the verdicts include damages for both loss of use and enjoyment and permanent injury to the property. It is equally undiscoverable whether the jury found the injury to be temporary or permanent. A possible duplication of damages cannot, therefore, be eradicated by a molding of the verdicts. Hence a new trial is necessary.

In a situation such as submission of the issues in this case presents, the trial court would do well to in-

struct the jury that, in case it awards the plaintiff damages, it should also specify by its verdict whether it found the injury to be permanent or temporary. In that way, it would appear of record whether the plaintiff was fully compensated by the jury's verdict for the damages due to a permanent injury to his land or whether he retained a right to successive actions for damages so long as the nuisance was continued.

Order affirmed.

Mr. Justice MUSMANNO dissents.