Keefer, Appellant, *v.* Byers.

448

Argued November 12, 1959.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE,
JJ.

*James P. Coho*, for appellant.

*W. Hensel Brown*, with him *Brown & Zimmerman*,
for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 22,
1960:

In this trespass action for damages for personal in-
juries suffered by the plaintiff in a collision between
his automobile and defendant's truck, the jury returned
a verdict in the sum of $8,000 for plaintiff Keefer.*
The defendant moved for judgment n.o.v. and for a new
trial.   The motion for judgment n.o.v. was abandoned

---

* Keefer's wife had originally been joined with him as a plain-
tiff but was eliminated at trial by a compulsory nonsuit and is no
longer a party to the record.

by counsel at the argument on the new trial motion. The court awarded the defendant a new trial because of an absence of instruction to the jury with respect to certain testimony introduced at trial by the plaintiff. The court concluded that the cited omission from the charge, even though unexcepted to or complained of by the defendant, constituted basic and fundamental error. The plaintiff has appealed, assigning for error the new trial order and the court's failure to enter judgment on the verdict.

Ordinarily, upon an appeal from the grant of a new trial, the appellant has the very heavy burden of endeavoring to establish that the action of the court below in such regard constituted a clear and palpable abuse of discretion: *Muroski v. Hnath*, 392 Pa. 233, 237, 139 A. 2d 902; *Braughler v. Commonwealth*, 388 Pa. 573, 581, 131 A. 2d 341; *Frank v. W. S. Losier & Co., Inc.*, 361 Pa. 272, 276, 64 A. 2d 829. However, where it clearly appears, either by certificate of the trial court or in its opinion on the new trial motion, that, except for the reason relied upon by the court for granting a new trial, judgment would have been entered on the verdict, the action of the lower court becomes reviewable, not for an abuse of discretion, but for the legal merit of the sole and exclusive reason assigned for the granting of the new trial: *Culver v. Lehigh Valley Transit Company*, 322 Pa. 503, 511, 186 A. 70. The latter contingency is the situation disclosed by the record in the instant case. The opinion for the court below makes it indisputably plain that, except for the reason deemed by the court as requiring a new trial, judgment would have been entered on the verdict for the plaintiff. We therefore have for review the merit, as a matter of law, of the reason assigned by the court below for its action.

The plaintiff, who was his only witness as to the happening of the accident, testified to facts from which

the jury could find that negligence on the part of the defendant was the proximate cause of the collision. On cross-examination, he was interrogated at length by factually ladened questions which strongly suggested that his version of the collision was a belated fabrication. To offset the impeaching effect of the cross-examination, the plaintiff called, as a witness, his son who was permitted to testify, over the defendant's objection, that the plaintiff had told him, a few days after the accident, at the hospital to which the plaintiff had been removed following his injury, that the collision had happened in a manner which did not differ materially from the narrative which the plaintiff himself had related on the witness stand. The admission of the son's testimony for the purpose of re-establishing the plaintiff's credit as a witness to the accident was a sound exercise of the trial judge's discretion. The son's testimony qualified as a consonant statement which, although hearsay and not proof of the substantive matter it contained, was admissible for the purpose of rehabilitating the credibility of the plaintiff whose veracity, if not integrity, has been interrogatingly impugned.

In *Risbon v. Cottom*, 387 Pa. 155, 162-163, 127 A. 2d 101, we summarized from the decisions on the admissibility of consonant statements as follows: "An admissible consonant statement, as defined in the *Lyke* case, supra [*Lyke v. Lehigh Valley Railroad Co.*, 236 Pa. 38, 47-51, 84 A. 595], is 'a prior declaration of a witness whose testimony has been attacked and whose credibility stands impeached, which, considering the impeachment, the court will allow to be proved by the person to whom the declaration was made, in order to support the credibility of the witness, and which, but for the existence of such impeachment, would ordinarily be excluded as hearsay.' The rule has ancient and illustrious authority in this State. In Craig v.

Craig, 5 Rawle 91, 97-98, Chief Justice GIBSON adopted Mr. Starkie's rule (1 Starkie's Evid. 187) 'that consonant declarations may be given in contradiction of evidence tending to show that the testimony at the bar is a fabrication of a recent date; and to show that *the same statement was made before its ultimate effect on the question trying could have been foreseen . . .*' (Emphasis supplied)."

While no direct evidence impeaching the plaintiff was introduced at trial, the disparaging effect of the facts assumed by the cross-examiner's questions, casting doubt, as they did, on the verity of the plaintiff's testimony, served to attack his credibility no less harmfully than direct impeaching evidence would have done.

In any event, the appellee has not urged upon us, as justification for the granting of the new trial, the objected-to admission of the testimony of the plaintiff's son, although that had been the principal one of the two reasons advanced by the defendant in the court below in support of his new trial motion. The other reason was that the trial judge had erred in submitting pain and suffering as an element of compensable damage when, as the defendant alleged, there was no direct proof that the plaintiff had so suffered. The court below very properly and very cogently rejected both grounds. What we have hereinbefore said as to the consonant-statement testimony amply justifies its admission. And, the extensive injuries suffered by the plaintiff as revealed by the undisputed medical testimony, furnished the most unerring evidence of the pain and suffering which the plaintiff must have endured. Cf. *Todd v. Bercini,* 371 Pa. 605, 607, 92 A. 2d 538.

All that the appellee has argued, therefore, in this Court, in an effort to sustain the granting of the new trial is what the court below adopted, *sua sponte,* as ground for a new trial, namely, the fact that the trial judge did not instruct the jury as to the limited office

of the consonant-statement testimony given by the plaintiff's son. The court below so acted even though it patently recognized that defendant's counsel was to blame for not having called the oversight to the trial judge's attention. Nevertheless, the court took upon itself some fault for not having so charged and granted a new trial by concluding that the omission constituted basic and fundamental error. By so doing, the court unwittingly penalized the plaintiff for the manifest inaction of his adversary's counsel at trial. Objections and exceptions not only serve a useful and proper purpose in protecting the objector's or exceptant's rights with respect to rulings on evidence made at trial, but the opposite party, as well as the court, is rightly entitled to have objections and exceptions made both timely and understandably. If that is done, the above-named procedural devices may, and often do, serve to bring about the eradication of their ascribed complaint and, thus, obviate the trial's later being rendered abortive.

In this case, at the conclusion of an extensive, fair and impartial submission of the issues, the trial judge asked in the presence of the jury, "Do counsel have any requests for further instruction?" To this inquiry, counsel for defendant remained silent. After the jury had retired to deliberate on its verdict, he requested a "General exception to the charge and a specific exception to the court charging on pain and suffering . . . ." At no time had he requested any instruction in respect of the limited purpose of the consonant-statement testimony. Nor, as we have already noted, did he call the omission of such instruction to the attention of the trial judge. "Where no particular instructions are prayed the court is responsible only for the general effect of the charge considered as a whole, and not for mere omissions to say what might properly have been said": *Lerch v. Hershey Transit Co.*, 255 Pa.

190, 195, 99 A. 800. It was stated in *Tucker v. American Car & Foundry Co.*, 218 Pa. 323, 326, 67 A. 616, to be a general rule that ". . . mere omission [in a charge to a jury] to say what might have been properly said, cannot be treated as reversible error when no points were submitted to the court below asking for specific instructions." Nor may a party sit by silent, and take his chances on a verdict and then, if it is adverse, complain of a matter which, if erroneous, could have been dissipated timely by the court's prompt rectification of the charge. *Commonwealth v. Razmus*, 210 Pa. 609, 611, 60 A. 264.

Moreover, we have expressly ruled that failure of a trial court to charge with respect to the restricted evidentiary use of consonant-statement testimony does not constitute basic and fundamental error where the complaining party neither requested cognate instruction nor called to the court's attention the absence of such instruction. What we said in this connection in *Risbon v. Cottom*, supra (pp. 163-164), is so peculiarly apposite here as to justify quotation therefrom at length: "The appellant further complains that the trial court did not instruct the jury that the State policeman's testimony in rebuttal as to what Cottom had told him in the hospital a week after the accident concerning the manner of its occurrence was not substantive proof of the facts therein contained but was designed merely to support Cottom's credibility against the imputation that his testimony at trial respecting the happening of the accident was a recent fabrication. Such an instruction should, of course, have been given: see, e.g., Lyke v. Lehigh Valley Railroad Co., supra, at p. 51. But, counsel for appellant stood silently by and made no request for an instruction in such regard even when, at the conclusion of the charge, the learned trial judge specifically inquired whether he had 'missed anything as a matter of law' and, again, repeated the in-

quiry. "The rule that an appellate court will not grant a new trial on the ground of inadequacy unless there is omission of something basic or fundamental, is especially applicable where the complaining party was invited to suggest additions to or modifications of the charge and remained silent': Pryor v. Chambersburg Oil and Gas Company, 376 Pa. 521, 530, 531, 103 A. 2d 425. Not only did counsel for appellant make no response to the trial judge's repeated inquiry but, in subsequently excepting to the charge, he failed to call to the court's attention that it had not explained to the jury the scope and purpose of the State policeman's testimony in rebuttal embracing Cottom's prior consonant statement." The parallel furnished by the instant case is striking.

The record on this appeal does not entitle the defendant to an after-verdict advantage because of a procedural and uncomplained of oversight at trial in connection with the consonant-statement testimony especially since it had been made competent *only* because of the impeaching nature of the cross-examination to which the plaintiff had been subjected and for which the defendant was solely responsible. In short, except for the discrediting insinuations of the cross-examination of the plaintiff, his son's testimony would have been inadmissible hearsay. But, having been properly admitted in evidence, it was peculiarly incumbent upon the defendant to be alert in guarding against its possible use in transgression of its rightful purpose. Indeed, it was not defendant's counsel who raised the question below for which the court granted a new trial. It was the court itself acting out of a mistaken conception of required caution.

The jurors could not have been at any misunderstanding concerning the testimony of the plaintiff's son. They were all well aware that he had not witnessed the accident. The court below expressly so rec-

ognized where it said in its opinion on the motion for a new trial, "The jury knew that the son did not see the accident happen . . . ." His testimony is replete with ascriptions of his knowledge of the accident to what his father had told him in the hospital a few days later. In the charge to the jury, the trial judge reviewed the testimony of the witnesses on the question of liability and scrupulously restricted such testimony to that of the plaintiff, the defendant, the defendant's son, who had accompanied his father in the truck, and a State trooper who arrived at the scene of the collision some 20 to 30 minutes after its occurrence. Throughout the charge, the trial judge made no reference whatsoever to the plaintiff's son nor to what he had testified to as a witness. Certainly, the court's charge did nothing to confuse in the minds of the jury the question of liability by any reference to the consonant-statement testimony.

The issue of liability was sharply drawn. On the one hand, the plaintiff testified that the collision was caused by the negligence of the defendant in veering his truck across the center line and striking the plaintiff's automobile which he was driving southward in his proper lane, while, on the other hand, the defendant and his son, who accompanied him, each testified that the collision was caused by the plaintiff's negligence in driving his automobile across the center line and striking, and overturning, the defendant's truck, which he was driving northward in his proper lane. Those three witnesses were the only eyewitnesses to the accident. The issue as to who was at fault for the collision was submitted to the jury in an eminently fair and impartial charge.

As will hereinafter clearly appear, the verdict did not fully compensate the plaintiff for his proven and unquestioned actual loss of wages, his hospital expenses and doctors' bills. Such being the case, it seems

evident that the jury must have resolved the sharply defined issue of credibility by compromising the quantum of damages and the question of defendant's liability. But the verdict is no worse for being a compromise since the evidence of the defendant's liability was not preponderant in quantity and the damages awarded by the jury's verdict are not insubstantial. See *Patterson v. Palley Manufacturing Co.*, 360 Pa. 259, 268, 61 A. 2d 861.

That the verdict was not wholly compensatory is arithmetically clear. Among the injuries suffered by the plaintiff were a compound fracture of the left femur, a fracture of the left hip bone, lacerations of the thigh and abdominal pains and soreness. The fractures made it necessary for the plaintiff to be placed in traction and were reduced by operations with some bone grafting of the femur, into which a pin was inserted for the length of the bone and which later had to be removed, after joinder of the fracture had been made, in order to relieve stiffness of the left knee. There were additional incidental physical and nerve difficulties which need not now be recited at length. While the plaintiff ultimately made what the doctors considered a reasonably satisfactory recovery, in view of the seriousness of his injuries, his left leg was permanently shortened by one-half inch. He was confined to the hospital for a little over six months and lost two years of work at his trade as a carpenter, at which he had been regularly employed prior to the accident at $85 a week for a five-day week. He proved actual loss in wages in excess of $8,500, a hospital bill in excess of $2,300 and doctors' bills aggregating approximately $400. It is clear that the verdict of $8,-000 did not compensate the plaintiff for his actual loss of earnings and hospital and medical expenses, not to speak of the proven impairment of his future earning power or the pain and suffering which, of course, he

must have endured for a considerable period of time.

That the case was one for a jury, no one can reasonably gainsay. The defendant himself, as already indicated, voluntarily abandoned his motion for judgment n.o.v. at the argument on his motion for a new trial. No good reason appears why this case should be tried again. The defendant received the fair trial to which he was entitled, and the plaintiff by appealing from the grant of a new trial, has clearly evidenced his willingness to accept the verdict even though it is less than his proven actual damages.

The order granting a new trial is reversed and the record remanded with directions that judgment be entered on the verdict for plaintiff.

Mr. Justice BELL dissents.