James *v.* Ferguson, Appellant.

Argued April 28, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Harold E. McCamey,* with him *Dickie, McCamey, Chilcote & Robinson,* and *Rowley, Smith & Rowley,* for appellant.

*John D. Ray,* with him *Ray, Good & Hudson,* for appellees.

OPINION BY MR. JUSTICE EAGEN, June 29, 1960:

This is an action in trespass for personal injuries suffered by plaintiff, Doyle James, and property damage by plaintiff, Hoyt B. James, as a result of an automobile collision allegedly caused by negligence of an employee of the defendant. The jury returned verdicts of $1,000 in favor of Hoyt B. James and $70,155 in favor of Doyle James. A new trial was refused and judgment entered upon the verdict. It is argued that this was error in that the verdict in favor of Doyle

James was grossly excessive and that this was due in large part to substantial and prejudicial error committed by the trial judge in his charge to the jury and in the admission of certain testimony relating to the loss of earning power. No question is raised as to the sufficiency of the evidence to warrant the finding of negligence of the defendant.

The circumstances incident to the accident are as follows: On January 1, 1957, plaintiff, Doyle James, was operating a loaded International flat-bed truck owned by his brother, Hoyt, in a westerly direction on the Ohio Turnpike. The roadway was dry and visibility clear. Travelling in the same direction was a truck owned by the defendant and driven by his employee, Merle Powell. This truck was a tractor-trailer loaded with approximately seventeen tons of coal. Powell was in the process of passing the James truck when, in the rear view mirror, he saw a third truck approaching from the rear and apparently preparing to pass the truck he was driving. Powell applied the brakes and attempted to pull completely back into the extreme right lane of traffic, when the air brakes on his truck locked, the wheels slid two hundred and five feet, causing the defendant's truck to strike the rear of the plaintiff's truck with great force. The latter vehicle went off the right side of the roadway, stopping astraddle the highway fence and steel cable, after knocking down five or six six-inch steel guard-rail posts. The impact caused the legs of the plaintiff to hit the dashboard of the truck and inflicted serious injury upon him.

The injured plaintiff and his brother, Hoyt, at the time of the accident were partners in a lumber business, which consisted of cutting timber, making lumber, selling and delivering it to others for the production of barrel staves. Doyle's work consisted of operating

a bulldozer, cutting timber, loading, unloading and driving a truck. The defendant-appellant complains that the trial judge erred in admitting into the evidence testimony concerning the profits received by Doyle, in the operation of the partnership during the years 1956, 1957, 1958 and part of 1959. This evidence was not proper to show loss of earning power (*Dempsey v. City of Scranton*, 264 Pa. 495, 107 Atl. 877 (1919)), since the profits realized therefrom were derived from the labor and skill of several individuals engaged in the furtherance of the business. The true test was the value of plaintiff's services therein. However, it was defendant's own counsel who was responsible for this line of inquiry and who first directed questions and elicited answers in this category on cross-examination. It was, undoubtedly, pursued in order to minimize plaintiff's loss in the eyes of the jury by showing that his share of the business profits was approximately the same immediately before and subsequent to the accident. The questions by plaintiff's own counsel on redirect examination were entirely proper in view of the defendant's opening of the door into this phase of the inquiry. Very significantly, too, no objection to these questions was voiced, nor was any motion made to strike this portion of the testimony from the record. Under such circumstances, this can hardly be successfully assigned as a valid reason for a new trial.

It is also argued that the trial judge erred in his instructions to the jury relative to loss of earning power and especially as to how it should be reduced to its present "net worth."

As to loss of earning power and its reduction to present worth, the court in part charged: "There is evidence in this case as to the amount which the partnership paid Doyle after the injury. We indicate to

you that that amount is received in evidence not as evidence of the loss of that much money by Doyle James. That is not the basis upon which you fix the amount of the depreciation of his earning power as such. It is received in evidence for the purpose of giving you some evidence of the value of his loss of earning power. If you find there is a partial loss of earning power, you will determine what his condition is going to be in the future—whether he is going to have some partial recovery, whether he is going to get better, whether he is going to stay the same, as he is, or whether he is going to get worse. Then, from that, you take into consideration his past earnings, his education, his ability, his opportunity in life—how much has his earning power been reduced and how long will it be reduced? It is not the loss of earnings which is contemplated in this element of damages, but the loss of earning power; and the standard by which to test earning capacity is whether the power or capacity to earn has been diminished as a result of this injury. . . . If you make an award for the impairment of earning power, you should bear in mind that the gross amount of what the Plaintiff will lose in the future—if this amount is calculated, it would have to be reduced to its present worth—that is, to a sum which, if paid on the date of the verdict, would be a just cash equivalent of the sum total of such lost impairment of future earning power. The award for the impairment of earning power must not exceed, though it should equal, the worth, at the date of the verdict, of a sum payable in normal future installments during what would be the period of the injured person's disability and ability to earn money had he not been injured. This sum would be made up by adding the money losses the injured person will sustain from year to year or month to month by reason of the impairment of his ability to earn money during the disability and the reasonably

expected duration of his life's future earning period. *It is, of course, mathematically certain that this present worth will be substantially less than the gross sum of computed lost future earnings, and the longer the person's life expectancy, the wider will be the gap between this gross amount of calculated lost future earnings and its contemporary value."* (Emphasis supplied.)

We do not agree that the charge in these respects, taken as a whole, was prejudicially erroneous. One or two sentences, when taken out of context, may not be in accordance with approved instructions in previous cases, but when the entire charge is studied, it appears to us that it is fundamentally correct and had no prejudicial effect. It is basic that in determining whether or not prejudicial error occurred, the entire charge must be considered: *Thomas v. Mills,* 388 Pa. 353, 358, 130 A. 2d 489 (1957).

In addition, no objections or exceptions to any portion of the charge were entered. When the court asked counsel if he wished to submit corrections or additions to the charge, defense counsel replied "nothing." Not even a *general objection* to the charge was entered. It is fundamental that, where no specific instruction is prayed for, the court is responsible only for the general effect of the charge, considered as a whole: *Lerch v. Hershey Transit Co.,* 255 Pa. 190, 195, 99 Atl. 800 (1916); *Keefer v. Byers,* 398 Pa. 447, 452, 159 A. 2d 477 (1960). Failure of trial counsel to manifest any disagreement with the court's instructions precludes, in the absence of fundamental and prejudicial error, a subsequent contention that it was erroneous: *Luterman v. Philadelphia,* 396 Pa. 301, 305, 152 A. 2d 464 (1959).

Was the verdict excessive? This is the principal question raised in this appeal. The plaintiff suffered a ruptured intervertebral disc in the lower lumbar

region. This is a thick, heavy piece of cartilaginous tissue, which acts as a shock absorber for the bony structure of the spine. He was under almost continuous treatment by an osteopathic physician and an orthopedic surgeon for approximately twenty-one months following the accident. He wears a steel-padded back brace and will be required to wear it indefinitely. He suffers severe pain almost constantly with little hope of its complete alleviation. At the time of trial, more than thirty-four months subsequent to the accident, his condition had improved only to a limited degree. The physicians testified that the only possibility of relieving the pain was through surgery. This was described as a major operation, consisting of a wide incision in the back, exposing the entire backbone and its protective tissue, removing the damaged disc and eliminating the pressure on the nerves involved.

As a result of this condition, the plaintiff had been unable to perform the work he had been doing for years prior to the accident. He was unskilled and, ever since he started to work, was accustomed to employment of the heavy laboring type, such as truck driving, loading and unloading heavy material, and lumber-jacking. He was totally disabled for one year. He tried to engage in lighter employment following this period, but found that it was painful and difficult. The medical testimony indicates that his only hope of doing real hard work at some date in the future lies in a successful operation. Even this is problematical. The over-all effect of the testimony convincingly indicates that, for the rest of his life, light employment will be his only means of earning a livelihood, a predicament which greatly limits his prospects of future steady employment.

At the time of trial, plaintiff was thirty-one years old, married and the father of six children, all under

twelve years of age. The testimony indicates that the wage paid for work of the type plaintiff performed before the accident was approximately three hundred and forty dollars a month. The lower court did not believe that the amount awarded was excessive and we, on the record, have found no valid cause to disturb this conclusion.

While the medical and hospital bills were comparatively small ($1517.15), the plaintiff has suffered a substantial and long-continuing loss of earning power and he has also undergone severe and unabating pain for a long period of time which will, in all probability, continue as long as he lives. While an operation may correct this condition, we cannot, in view of the serious nature thereof, say that his refusal to submit thereto should affect his right to retain this recovery: *Martin v. Pittsburgh Rys. Co.*, 238 Pa. 528, 531, 86 Atl. 299 (1913); *Potts v. Guthrie*, 282 Pa. 200, 127 Atl. 605 (1925).

The issue of the amount to be awarded to an injured person for pain and suffering and loss or impairment of earning power, both past and prospective, is primarily a jury question. It is the duty of the trial court, when the circumstances cry for judicial interference, to modify the amount awarded an injured plaintiff for loss caused by a tortfeasor, and it will not be reduced on appeal unless it clearly shocks the appellate court's sense of justice: *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A. 2d 123 (1957); *Flank v. Walker*, 398 Pa. 166, 157 A. 2d 163 (1960). After very careful consideration, we are unable to say that plaintiff's verdict was so manifestly excessive as to render the order of the trial court sustaining it a palpable abuse of discretion.

The judgment is, therefore, affirmed.