Segriff *v.* Johnston, Appellant.

Argued September 28, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused January 18, 1961.

*George Y. Meyer*, with him *Carl A. Eck*, and *Meyer, Darragh, Buckler & Bebenek*, for appellant.

*Edward O. Spotts*, with him *Leonard E. Price*, for appellee.

OPINION BY MR. JUSTICE BELL, November 15, 1960:

Plaintiff brought an action for personal injuries; the jury returned a verdict for defendant. The trial Judge died; a substituted Judge granted a new trial *for the sole reason* that the trial Judge committed basic error in charging that all plaintiff established was the "defendant was *slightly remiss\** in his duties." Defendant took this appeal.

At approximately 4:30 a.m. on March 31, 1956, defendant was driving his automobile east on Route 28 from New Kensington toward Tarentum. He was driving in his right-hand lane. Michael Segriff, the victim of the accident, had been coming from New Kensington. He was 73 years old; he died a natural death before the trial, and consequently his administrator was substituted. In order to make out a case, plaintiff had to rely on the testimony of defendant—called as on cross-examination—and of a police officer who happened to be following defendant in another automobile. Route 28 at the point of the accident is a three lane highway, 41 feet wide. On the left side of the highway is a *paved sidewalk;* on the right side where the accident occurred there was no sidewalk, but only a dirt pathway adjoining the curb. There were no buildings along the right side of the highway, but there was a large junk yard opposite the point of the accident. The nearest light was approximately 75 feet from the point of the accident and it and several other lights nearby were on the left-hand side of the road.

---

\* Italics throughout, ours.

Defendant, we repeat, was driving on the right-hand side of the road. Plaintiff's testimony showed that at the time of the accident (and for some time before) it was dark, there was a drizzling rain and visibility was poor. Defendant was driving about 35 miles an hour. He testified that although it was raining and the visibility was poor, he could see approximately 100 feet in front of his car—he was watching the road ahead of him in the vision or range of his automobile headlights and *there was nobody there to see and he saw no one.* Suddenly defendant felt a bump on the right side of his car and out of the corner of his eye caught a glimpse of an object which he was unable to identify. He was driving approximately 5 or 6 feet from the edge of the dirt pathway and the left wheels of his car straddled the dividing line between the first and second lanes. He brought his car to a stop within approximately 75 feet and went back to discover what had happened. He found Segriff lying near the curb on the right side of Route 28, with his head and feet approximately 2 to 3 feet from the right-hand curb. Officer Novosat, who was following defendant in his automobile, testified for plaintiff that defendant said to him "I did not see the man and I hit him." There were marks on the side of the right front fender of defendant's automobile 8 inches back of the right front headlight, and the radio aerial—which was 2 inches from the windshield on the right side of defendant's car—was bent. There was no damage to or marks on any part of the front of defendant's car. Plaintiff produced no evidence which would justify a finding as to where decedent was at the time of or just before the accident—whether he was in the highway or had stepped from the dirt path, or had come out of the junk area. The officer did not see the accident itself, but corroborated defendant's testimony in all material respects, namely, as to defendant's speed, the weather

conditions, defendant's description of the roadway, and the physical evidence of defendant's car.

This case was obviously one for the jury and the jury, who saw and heard the witnesses and saw the photographs, found in favor of defendant. The charge of the trial Judge, JOHN J. KENNEDY, was able and very fair on the subject of negligence, contributory negligence and a summarization of the facts. When, however, he came *to the subject of damages,* he said:

". . . The test is that the amount that you allow is in the nature of compensation, not in the nature of punishing the defendant through his pocketbook. There is no claim here that this defendant wanted to hit this man on this night, if he hit him, as distinguished from him walking *into* the side of his car. All the claim here is that this defendant was slightly remiss in his duties to this plaintiff at the time the accident occurred, and as a result of his laxness or remission or inattention, and so forth, that had he been alert he would have seen him on the road, and he didn't see him and he ran him down, but there is no claim here that he wanted to hurt him. So it is only that he was negligent, that he was not acting with due care, and as a result that this man was badly hurt. So that the pain and suffering and inconvenience item, if you are going to find for the plaintiff in this case, would be in the realm of compensation."

This charge must be considered not only in the light of the evidence, but also in the light of the fact that plaintiff had averred in his complaint and had contended in his address to the jury that defendant was guilty of gross and wanton negligence in striking plaintiff when he was lawfully walking along the highway. It is crystal clear that there was no gross and wanton negligence, and it is equally clear that the trial Judge's charge was directed to this contention. Not only did counsel for plaintiff fail to take an exception

to this part of the Court's charge, but the trial Judge called both counsel to side bar following his charge and asked "Now, does counsel for either party have any suggestions, additions, or corrections, amplifications?" Counsel had none.

As Chief Justice JONES said: "a party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court's attention properly and timely. Keefer v. Byers [398 Pa. 447, 159 A. 2d 477]; Commonwealth v. Razmus, 210 Pa. 609, 611, 60 A. 264." *Bell v. Yellow Cab Co.*, 399 Pa. 332, 338-39, 160 A. 2d 437. "A proper administration of justice requires that new trials be not granted on errors which counsel had ample opportunity to correct. It is only when errors are basic and fundamental and cannot be corrected at the trial that this Court will consider them under a general exception: Medvidovich v. Schultz, 309 Pa. 450; Whitton v. H. A. Gable Co., 331 Pa. 429." *McDonald v. Ferrebee*, 366 Pa. 543, 547, 79 A. 2d 232.

Moreover a charge of the Court must be considered in its entirety; isolated portions thereof, even if erroneous, will not justify a new trial unless they constitute basic, fundamental and prejudicial error: *James v. Ferguson*, 401 Pa. 92, 162 A. 2d 690; *McDonald v. Ferrebee*, supra; *Giunnone v. Reale*, 333 Pa. 21, 3 A. 2d 331; *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Clanton*, 395 Pa. 521, 151 A. 2d 88; *Commonwealth v. Richardson*, 392 Pa. 528, 140 A. 2d 828; *Commonwealth v. Donough*, 377 Pa. 46, 103 A. 2d 694; *Commonwealth v. Patskin*, 372 Pa. 402, 93 A. 2d 704.

Under all the above mentioned facts and circumstances of this case we consider that the words "slightly remiss" in that portion of the charge which related

to damages was harmless and not fundamental basic error.

We will not reverse the grant of a new trial unless (1) there was a clear abuse of discretion or (2) an error of law which controlled the outcome of the case, and the error is the sole reason for granting a new trial: *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902; *Londrino v. Equitable Life Assurance Society,* 377 Pa. 543, 105 A. 2d 333; *Fitzpatrick v. Sheppard,* 346 Pa. 240, 29 A. 2d 475; *Beal v. Reading Co.,* 370 Pa. 45, 87 A. 2d 214; *Hess v. Gusdorff,* 274 Pa. 123, 117 A. 671; *Samuels v. Johnson,* 355 Pa. 624, 50 A. 2d 670; *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857. See also *Bell v. Yellow Cab Co.,* 399 Pa. 332, 334, 343-344, 160 A. 2d 437.

The grant of a new trial was under all the circumstances clear error.

Judgment reversed and here entered on the verdict for defendant.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I do not agree with the proposition which has been stated on numerous occasions by this court and repeated in the Majority Opinion here, namely: "A party may not sit by silent, take his chances on a verdict, and, if it is adverse, then complain of matter which, if error, could have been eradicated during the trial if brought to the court's attention properly and timely."

The constant repetition of this statement does not make it reasonable any more than the constant reiteration that 2 and 2 makes 5 establishes that particular arithmetical distortion to be correct.

I do not agree with this statement in the Majority Opinion because it makes of a court trial something in the nature of an athletic contest, a chess game, or

perhaps a good-natured rivalry at cards. A trial has but one object, or should have but one object, and that is the ascertainment of truth and the production of justice. To say that a new trial should not be granted, if a major error has been committed, only because the lawyer did not object, is like saying that a sick person should not be given additional treatment and should be allowed to die if the doctor erred in his original diagnosis and prescribed the wrong medicine.

The rule quoted by the Majority is wrong for many other reasons. If the Trial Judge did not perceive the error he committed, why should the lawyer be penalized for failing to see it? Moreover, there are some errors of such a serious character that no eraser can wipe them out and no instruction can eradicate them from the minds of the jury.

The Trial Judge in this case said to the jury: "All the claim here is that this defendant was slightly remiss in his duties to this plaintiff at the time the accident occurred, and as a result of his laxness or remission or inattention, and so forth, that had he been alert he would have seen him on the road, and he didn't see him and he ran him down, but there is no claim here that he wanted to hurt him."

This is not a statement of law; it is an argument for the defendant. There is nothing in the record which would justify the assertion that the plaintiff's claim was that the defendant was only "slightly remiss." The plaintiff's contention was that the defendant was negligent—grossly negligent—in running down a 73-year old man. For the Trial Judge to say that the plaintiff was charging the defendant only with a slight remissness meant either that the Judge was being sardonic at the expense of the plaintiff or that in his opinion there had been no real negligence shown— only a slight inattention, a remissness, a laxness, a little oversight. The Jury, in view of that statement

coming from the supreme authority in the courtroom, the Judge, could easily have concluded that the meager fault attributed to the defendant by the Judge did not measure up to the definition of negligence as given elsewhere in the charge.

The Trial Judge's error was basic and fundamental and entitled the plaintiff to the new trial which was ordered by the reviewing court below.