## Kaercher v. Miller

*J. Leonard Solomon,* for plaintiff.

*George I. Buckler, George Y. Meyer, Charles McC. Barrickman* and *Wallover & Barrickman,* for defendant.

REED, P. J., Orphans' Court, Thirty-sixth Judicial District, Specially Presiding, February 23, 1961.—In these actions for damages brought by plaintiff, administratrix, for the death of her husband, as the result of personal injuries, the jury returned verdicts for plaintiff in the sum of $3,883.50 under the Wrongful Death Act of April 15, 1851, P. L. 669, as amended, 12 PS §1601 et seq., and for $5,000 under the Survival Act of April 18, 1949, P. L. 512, 20 PS §320.601. Defendant has filed motions for judgment n. o. v., and for a new trial.

The accident occurred about 7:15 p.m., October 21, 1956, in the City of Beaver Falls, on Eighteenth Street, a public highway, at a point approximately 85 feet west of the curb line at the intersection of Eighteenth Street and Seventh Avenue. Seventh Avenue runs generally north and south and is approximately 60 feet wide. Eighteenth Street runs generally east and west and is approximately 33 feet 10 inches wide. The night was clear and the roadway was dry. Immediately prior to the accident, defendant drove his automobile northwardly on Seventh Avenue to the intersection of Eighteenth Street where he made a left turn into Eighteenth Street and proceeded westwardly on Eighteenth Street for about 85 feet when he struck plaintiff-decedent. Immediately after the accident, decedent Kaercher's body was lying near the center of the highway 85 feet from the west line of Seventh Avenue and 12 feet one-half inch from the north curb of Eighteenth

Street and a good "six feet" in front of the Miller car. Defendant was the only eye witness to the happening of the accident. He testified that he stopped at the intersection of Seventh Avenue and Eighteenth Street before making the left turn into Eighteenth Street and then proceeded at the speed of from 15 to 20 miles per hour. He further testified there were no cars proceeding in front of him nor any coming toward him from the opposite direction. He further testified that when "I started up, and I seen Mr. Kaercher in front of me, and I—he was about just about two feet in front of me when I seen him, and I slammed on the brakes but it was too late, and I hit him."

Three witnesses testified as to defendant's statements made immediately after the accident and the following day. Raymond L. Valli, a witness for plaintiff, testified that immediately after the accident defendant said "He didn't see him", meaning "Mr. Kaercher." Officer Franzini testified as to the happening of the accident, as follows:

"He stated that he was traveling north on Seventh Avenue and was turning west on Eighteenth Street, and as he was turning west on Eighteenth Street he looked and seen Mr. Kaercher out in front of him. He hit his brakes, but it was too late. 'I hit Mr. Kaercher;' knocked him approximately two foot in front of his car." Police Officer Martin E. Breit testified from a statement signed by defendant the day following the accident, as follows: "Q. Your car was traveling north on Seventh and had completed the turn into Eighteenth Street west?

"A. Yes, sir.

"Q. How fast would you say you were traveling at this time?

"A. Not over fifteen, twenty miles an hour, between there.

"Q. Did you have to stop and wait for any oncoming traffic before you made the turn?

"A. One car.

"Q. In other words, before you went into Eighteenth Street you had to stop?

"A. I stopped. One car went by, and then I made the left turn.

"Q. Is your car standard shift?

"A. Automatic punch button.

"Q. After you started to turn and was traveling west on Eighteenth Street, were you still in low gear?

"A. I don't use low gear. It never shifts. I didn't feel it. It was still in low gear or range.

"Q. You were still in low range?

"A. Yes.

"Q. How far did you travel before you noticed anything?

"A. I don't know. I couldn't tell you that.

"Q. Would you want to tell us briefly what happened after you made the turn?

"A. I came around the turn, started up through there, and there he was. I hit my brakes at the same time I hit him."

The rules of law applicable to this factual situation are set forth in the opinion of the Superior Court reversing this court's refusal to grant a new trial following the first trial of this case and need no repetition here: Kaercher v. Miller, 191 Pa. Superior Ct. 416, 418, etc.

We are of the opinion that there was sufficient evidence to justify a finding of negligence on the part of defendant and that the circumstances of the accident, together with the statements made by defendant as to the happening of the accident, made necessary the determination of the issue of negligence and contributory negligence being submitted to the jury. See the recent case of Segriff v. Johnston, 402 Pa. 109, where

the Supreme Court held that a similar factual situation ". . . was obviously one for the jury . . ."

Defendant also asserts that decedent, Kaercher, did not die as the result of injuries sustained in the accident. Kaercher died December 12, 1957, approximately 14 months after the happening of the accident. Two qualified physicians testified as to the cause of death, the one, called by plaintiff, who was the attending physician from the time of the accident until Kaercher's death, and the other, called by defendant, the pathologist, who performed an autopsy after his death. Their testimony as to the cause of death was conflicting. This conflict could only be resolved by the jury.

For these reasons, defendant's motions for judgment n. o. v., and for a new trial will be refused.

### Order

Now, February 23, 1961, defendant's motion for judgment notwithstanding the verdict is overruled and dismissed, and defendant's motion for a new trial is overruled and dismissed. Upon payment of the jury fee, the prothonotary is ordered and directed to enter judgments upon the verdicts.