## Radinovic v. Abraham

*Jas. L. Weisman*, for plaintiff.

*Patrick R. Riley, Ronald H. Hock, Daniel P. Stefko, Raymond Hasley* and *Thomas Matis,* for defendants.

FINKELHOR, *J.,* August 29, 1980—The above medical malpractice action was before the court en banc on plaintiff's motion for a new trial from a jury verdict in favor of defendant M. R. Hadley, M.D. The issues before the court en banc are: (1) whether the trial judge erred in giving to the jury an "informed consent" charge and, (2) whether the charge itself was in accordance with Pennsylvania law.[1]

It is well settled in this Commonwealth that error in the court charge to which exception has been noted is grounds for a new trial: Vanic v. Ragni, 435 Pa. 26, 254 A. 2d 618 (1969); Davis v. Liberto, 240 Pa. Superior Ct. 132, 368 A. 2d 332 (1976). However, the charge must be viewed in its entirety and particular words or phrases may not be taken out of

---

1. Defendant Hadley contends that, while plaintiff objected to the charge, she did not object to the correctness of the law as stated by the court and, therefore, under Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A. 2d 114 (1974), the second issue may not be raised by the plaintiff. Unfortunately, there were considerable delays in the transcription of the record and comments made in chambers were not transcribed by the court reporter. However, in view of the long delay in these proceedings, the court will review plaintiff's arguments on the merits. Both plaintiff and defendant Hadley have agreed to this procedure.

context and the charge must be considered as a whole: McCay v. Philadelphia Elec. Co., 447 Pa. 490, 291 A. 2d 759 (1972); Rosato v. Nationwide Ins. Co., 263 Pa. Superior Ct. 340, 397 A. 2d 1238 (1979).

After a careful review of the record as set forth in the following discussion, it is our opinion that the charge of the court was: (1) supported by the evidence and, (2) was a proper statement of Pennsylvania law under the total charge of the court.

In order to determine the validity of plaintiff's exceptions, it is necessary to summarize the background facts and history of these proceedings.

## HISTORY

This medical malpractice action was originally brought by plaintiff, Ann Radinovic, against Doctors R. A. Abraham, Auslander, Bryce, McElroy, Madoff and Hadley and McKeesport Hospital. Plaintiff alleged that the various doctor/defendants and the hospital failed to properly diagnose the presence of active tuberculosis and, as a result of this failure, she sustained substantial injury and damages. Immediately prior to trial, settlement was effected between plaintiff and Drs. Auslander, Bryce, McElroy and Madoff and McKeesport Hospital and a voluntary nonsuit was then taken as to these defendants and leave was granted by the court to the remaining defendants, Abraham and Hadley, to join the additional physicians and the hospital for the sole purpose of liability over. During the course of trial, settlement was also reached with Dr. Abraham. The case proceeded through trial and resulted in a verdict for plaintiff against Dr. Abraham in the amount of $10,000 and in favor

of defendant Hadley, who had not settled, and in favor of all of the other defendants.

The present motion for a new trial, based upon an error in the charge, involves only defendant Hadley.

## FACTS

On the evening of December 31, 1967 plaintiff Radinovic went to the emergency room of McKeesport Hospital and reported that she was coughing up blood. She was admitted to the hospital and placed under the care of Dr. Hadley and was first seen by Dr. Hadley on January 1, 1968.

During the initial visit Dr. Hadley took a history, performed a physical examination and made a tentative differential diagnosis and ordered a series of tests relating to: (1) malignancy; (2) bronchietasis and, (3) Kochs infection (tuberculosis).[2] Three Aerosol sputum tests and a bronchiogram were ordered. One aerosol sputum test was performed. In addition, chest X-rays and an upper GI series were taken.

Pursuant to the testimony of Dr. Hadley and the hospital records, the bronchiogram was never performed and the patient Radinovic was discharged *at her own request* on January 6, 1968. It was Dr. Hadley's further testimony that the bronchiogram procedure, which includes the injection of novocain into the windpipe, was explained to plaintiff and that it was plaintiff's decision not to undergo this procedure. Plaintiff's own testimony denies such explanation was made.

Despite visits to the other defendant/physicians in this case, plaintiff was not diagnosed as having

---

2. These matters are set forth in the hospital records.

active tuberculosis until November 1973, at which time she was admitted to West Penn Hospital and subsequently transferred to Marcy State Hospital.

Based upon the above facts, plaintiff's expert witness, Dr. Theodore Rodman, testified that, in his opinion, plaintiff had active tuberculosis in January 1968 and that the care rendered by Dr. Hadley did not conform to the prevailing standards for medical care. Dr. Rodman further testified that the diagnosis of tuberculosis should have been made at the time of the McKeesport Hospital stay and that defendant Hadley failed to perform the necessary tests to diagnose active tuberculosis.

Dr. Hadley himself testified that a bronchiogram localizes the lesion from which the bleeding occurs and stated as follows:

"Q. Did you order any other tests?

"A. I ordered a Bronchiogram, which is almost regular with me in undiagnosed chest conditions.

"Q. What's the purpose of a Bronchiogram? Why do you order that?

"A. The Bronchiogram is ordered because it will localize the lesion where the bleeding was coming from, if present. That is ordered preparatory to having the Bronchioscopist do a Bronchioscope. You localize this lesion so the Bronchioscopist knows where to put or direct his Bronchioscope to get secretions or biopsies of whatever he wants."

At the time of trial, counsel for defendant Hadley requested a charge on informed consent and, with some minor changes,[3] the charge was given:

--------

3. The actual language of the requested point is as follows:
"You are charged that under the law of Pennsylvania, a physician is required to obtain the informed consent of a patient before the patient submits to treatment or a surgical procedure. A physician shall provide a patient with a true

"First, under the law of Pennsylvania, a physician is required to obtain the form [sic 'informed'] consent of a patient before the patient submits to treatment or a surgical procedure. The physician has to provide the patient with a true understanding of the treatment to be performed and the seriousness of the treatment and the procedure involved. Having been given this information the patient has the right to refuse the procedure, in which [sic] case the physician cannot be held responsible for the procedure not being performed."

It is this charge which constitutes the basis of plaintiff's motion for a new trial.

It should be noted at the outset that the charge in these proceedings involved seven defendants, even though settlement had been reached with six, and runs from page 316 to 349 of the transcript. The court attempted to simplify the issues — on a number of occasions:

". . . Now where there is a conflict in the testimony, and there are a number of places where a conflict does occur, perhaps the greatest conflict, or one of the issues in dispute, is whether or not the plaintiff had active T.B. at the time of her admission to McKeesport Hospital in 1967. Another question that's in dispute is whether or not it would be possible to have diagnosed active T.B. at that particular time. These are questions that are in dispute. . . .

. . .

---

understanding of a nature of the treatment or operation to be performed, the seriousness of it, the organs of the body involved, the purpose of the procedure and possible results. Having been given this information, the patient has the right to refuse the procedure, in which case the physician cannot be held liable or responsible for the procedure not being performed."

". . . When a defendant physician negligently fails to act or fails to employ indicated diagnostic or therapeutic measures and his negligence proximately causes injuries to his patient, the plaintiff does not have to prove to a certainty that proper care would have as a medical fact prevented the injuries in question. If a defendant physician's negligent action or inaction has effectively terminated his patient's chance of avoiding injuries, he may not raise conjectures as to the measure of the chance that he has put beyond the possibility of realization. If there is any substantial possibility of avoiding injury and the defendant has destroyed that possibility, he is liable to the plaintiff. . . . Now, in determining whether or not a physician has exercised the standard of care as I have read it to you, in other words, to employ the skill and knowledge usually possessed by a physician in the same or similar locality, and to exercise the care and judgment of a reasonable man, you may consider whether or not the symptoms of the patient are obscure or were not communicated to the physician in determining whether or not there was an error or mistake of diagnosis. To establish professional negligence in a case of this character expert testimony must be introduced to show that the defendant has defected from or has departed from the standard of care exercised by other physicians within the community. . . .

". . . It is the plaintiff's theory that Drs. Hadley and Abraham failed to properly diagnose her illness, that necessary tests were not performed, and that the failure to perform these tests and to diagnose the T.B. was professional negligence as we have defined it to you. It is the plaintiff's further position that this failure to diagnose the plaintiff in

1968 is the legal cause of the plaintiff's present condition. Now, there are a number of other factors that the plaintiff has raised in the case as to whether or not the plaintiff should have been referred to another doctor, and similar matters, but the basic matter that the plaintiff has attempted to prove to you is that the failure to diagnose T.B. in 1968 was professional negligence on the part of Dr. Hadley, and that this failure to diagnose T.B. in 1968 was the cause of the various injuries which the plaintiff suffered.

. . . .

"Now, it is the position of the original defendant, Dr. Hadley, that, one, the plaintiff did not have active T.B. in January of 1968, or even if she did have active T.B. at that time that he did all of those things, he followed the standards of care for the community and that he acted as a reasonable person in treating the plaintiff in McKeesport Hospital, and that under the facts as they existed it was not professional negligence not to diagnose T.B. . . .

". . . insofar as the burden falls upon the plaintiff to establish the negligence and that it was the legal cause, as to the defense, whether it be that it was impossible to diagnose or that the care was proper and adequate, the burden to establish these defenses falls upon the various defendants.

. . . ."

It is against this background of the total charge that plaintiff's allegation of error must be considered.

1. Charge not suppported by the record.

It is plaintiff's contention, based on Thomas v. Tomay,[4] 413 Pa. 270, 196 A. 2d 740 (1964), that the

---

4. The disputed charge was on contributory negligence.

trial record does not include sufficient evidence to justify a charge on "informed consent." In fact, the liability issue was professional negligence or malpractice and the so-called "consent issue" arose from plaintiff's alleged *refusal* to consent to the bronchiogram procedure—i.e., "informed refusal."[5]

Neither party has cited nor has the court found any specific Pennsylvania cases dealing with this precise issue.

In Truman v. Thomas, 27 Cal. 3d 285, 165 Cal.Rptr. 308 (1980), a medical malpractice action was based on the failure of the physician to properly warn plaintiff of the dangers of refusing to submit to a PAP smear, a common procedure for determining cervical cancer. Based upon this case, plaintiff argues that in the absence of specific testimony that defendant Dr. Hadley told plaintiff that he could *not* diagnose her condition absent the test or that T.B. could only be diagnosed by this test, a charge on informed consent was in error.

Conversely, Dr. Hadley's testimony and the hospital records set forth plaintiff's reluctance to undergo the procedure. This was a factor[6] to be considered by the jury in determining whether Dr. Hadley was negligent in failing to use the test procedure and to diagnose plaintiff's condition in 1968.

We believe that, based upon Dr. Hadley's testimony, there was sufficient evidence in the record to warrant a charge on the legal effect of plaintiff's refusal to consent to the procedure.

2. Erroneous statement of the law

5. Plaintiff requested discharge from the hospital.

6. Plaintiff's expert, Dr. Rodman, testified to a number of tests which would also have determined the existence of tuberculosis.

It is plaintiff's further position that the language of the court's charge on plaintiff's refusal to accept recommended treatment was inadequate in that the charge itself failed to specifically include the requirement that the physician inform the patient of the various alternatives and the risks in the event the patient refused the procedure. As noted by the District of Columbia Circuit Court in Canterbury v. Spence, 464 F. 2d 772 (D.C. Cir. 1972), a physician is under an obligation to communicate specific information to the patient when the exigencies of reasonable care call for such disclosures. The court, at p. 781, specifically stated as follows:

"Due care may require a physician perceiving symptoms of bodily abnormality to alert the patient to the condition. It may call upon the physician confronting an ailment which does not respond to his ministrations to inform the patient thereof. It may command the physician to instruct the patient as to any limitations to be presently observed for his own welfare, and as to any precautionary therapy he should seek in the future. It may oblige the physician to advise the patient of the need for or desirability of any alternative treatment promising greater benefit than that being pursued. Just as plainly, due care normally demands that the physician warn the patient of any risks to his well-being which contemplated therapy may involve."

In Gray v. Grunnagle, 423 Pa. 144, 223 A. 2d 663 (1966), a divided Supreme Court held that, in order to be valid, a patient's consent to surgery must be an informed consent and therefore it becomes the physician's duty to advise the patient of the possible consequences of the operation, as well as the possible alternatives to surgery: Feldman, Pennsylvania Trial Guide §31.23. Subsequent cases have

amplified the Gray opinion, but all agree that, in securing consent to a course of treatment, a physician has a duty to inform the patient as to the risks and hazards of the proposed procedure, so long as there is no emergency. The choice must be the choice of the patient.

It is plaintiff's position that the charge, as given, was inadequate in that it failed to include specific language concerning the physician's *obligation* to inform the patient of the various alternatives to the proposed bronchiogram and the possible risks from rejecting the bronchiogram.

However, informed consent, or "informed refusal," was a peripheral issue in these proceedings. Plaintiff did not base her claim on lack of informed consent, nor did plaintiff specifically allege negligence based upon the failure to properly inform the patient of the possible dangers of not proceeding with the bronchiogram test.

In determining whether the patient would have submitted to the treatment, an objective, rather than subjective, test is applied: Jeffries v. McCague, 242 Pa. Superior Ct. 76, 363 A. 2d 1167 (1976). Although the physician is required to inform the patient of alternate treatment possibilities, the defendant is not required to give the patient a recital of medical case book theory: Dunham v. Wright, 423 F. 2d 940 (3d Cir. 1970). The issue is not whether certain specific statements are made by the physician, but whether sufficient information is given to enable plaintiff to make an informed judgment. Based upon the testimony of this particular case, the charge of the court on this issue, while short, was sufficient to permit the jury to consider that the physician cannot proceed with treatment without the consent of the patient.

Finally, as we have previously stated, whether or not the jury verdict should be vacated and a new trial ordered cannot be determined by isolated portions of the court's charge. A charge of the court must be considered in its entirety and isolated portions thereof, even if in error, will not justify a new trial unless they constitute basic, fundamental and prejudicial error: Segriff v. Johnston, 402 Pa. 109, 166 A. 2d 496 (1960), cert. denied, 366 U.S. 941 (1961). A factor in the determination of whether a new trial should be granted as a result of erroneous instructions is, in part, whether the probable result of the trial was changed: Walker v. Martin, 214 Pa. Superior Ct. 287, 257 A. 2d 619 (1969).

We can understand plaintiff's chagrin in the returned verdict. However, even if the court assumes that the charge in this case was erroneous on "informed consent," we believe that the effect on the verdict would have been de minimis. The issue as set forth in plaintiff's case was failure to diagnose and not whether or not plaintiff had or had not consented to a given procedure: Cooper v. Roberts, 220 Pa. Superior Ct. 260, 286 A. 2d 647 (1971).

Based upon the above discussion, plaintiff's motion for a new trial is denied and an appropriate order attached hereto.

## ORDER

And now, August 29, 1980, upon plaintiff's motion for a new trial as to original defendant M. R. Hadley, M.D., and after full consideration of the transcribed record, arguments and briefs of counsel, it is hereby ordered, adjudged and decreed that said motion for a new trial is denied.